[No. 14984. Department Two. January 6, 1919.]

THE STATE OF WASHINGTON, *Respondent,* v.
LORIN D. ANGEVINE, *Appellant.*[1]

CONTEMPT (3) — PUBLICATIONS RELATING TO COURT PROCEEDINGS. Rem. Code, § 2372, subd. 7, providing that one who publishes a false or grossly inaccurate report of court proceedings shall be guilty of a misdemeanor, designates a particular kind of criminal contempt, regardless of common law definitions; and an information plainly charging the same is not subject to demurrer.

SAME (3)—PUBLICATIONS—PENDENCY OF PROCEEDINGS. In a prosecution for criminal contempt by publishing a false report of testimony that had already been given, the case was "pending" when the trial continued for several days after the publication.

SAME (22)—EVIDENCE—SUFFICIENCY. In a prosecution for criminal contempt by publishing a false report of court proceedings, the admission of the publication, and evidence of its gross inaccuracy and the synchronous pendency of the action, sustained a verdict, the weight and credibility of the evidence being for the jury.

SAME (3.)—PUBLICATIONS RELATING TO COURT—PENDENCY OF PROCEEDINGS. The publication of a false or grossly inaccurate report

[1]Reported in 177 Pac. 701.

of the proceedings of a court is criminal contempt, within Rem. Code, § 2372, subd. 7, whether the proceedings are pending at the time of the publication or concluded prior thereto.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered February 14, 1918, upon a trial and conviction of contempt. Affirmed.

*H. V. Davis,* for appellant.

*John B. White,* for respondent.

Holcomb, J. — Appellant, editor of The Spokane Press, was by information charged with, and by a jury found guilty of, the crime of criminal contempt, under Rem. Code, § 2372, which is as follows:

"Every person who shall commit a contempt of court of any one of the following kinds shall be guilty of a misdemeanor: . . .

"(7) Publication of a false or grossly inaccurate report of its proceedings."

Omitting the formal parts, the information is as follows:

"That on or about the twenty-second day of September, 1917, in the county of Spokane, state of Washington, the defendant, Lorin D. Angevine then and there being, and being then and there the editor in charge of a daily newspaper publication known and styled 'The Spokane Press,' which said newspaper circulated generally to the public in the city of Spokane, Washington, did then and there wilfully and unlawfully publish in said newspaper a false and grossly inaccurate article and alleged report of the proceedings in the case of the state of Washington, plaintiff, against James Ballmaine, defendant, which said case was a criminal prosecution and had theretofore immediately preceding said publication been, and was then, pending and being tried in the superior court of the state of Washington in and for Spokane county before

the Honorable Bruce Blake, a judge presiding, and a jury, which said false and grossly inaccurate article and alleged report so published was in the words and substance as follows, to wit:

" 'Rotten!

" 'Alone in a man-filled court room, Gladys Moore was put thru a disgusting rigmarole, by tittering and smirking attorneys in Judge Blake's court, Friday afternoon.

" 'The girl had charged James Ballmaine with having assaulted her. Prosecutor Jack White and attorney Bill Donovan took turns at questioning her—questions of the most personal nature.

" 'It was 'rich stuff' for the onlookers, among whom were boys of tender years:

" 'Donovan and White took it lightly, for they smiled and winked at friends in the crowd.

" 'The Press knows nothing about Gladys Moore; But the Press Knows That Such a Thing As This Shouldn't Be Aired in Open Court. Common decency should have prompted Judge Blake to call the case in chambers and to have reprimanded the attorneys for their failure to realize that the thing was deadly serious.

" 'Also, boys should be kept out at such times;'

"and which said published report was false and grossly inaccurate in the respects following, to wit:

"It was not true that 'Gladys Moore was alone in a man-filled court room,' because, in truth and in fact, reputable women interested in the welfare of the said Gladys Moore attended with her during the said trial and were present in the court room and in close communication with the said Gladys Moore, and

"It was not true that 'Gladys Moore was put thru a disgusting rigmarole by tittering and smirking attorneys', because, in truth and in fact the proceedings in the said cause and trial were conducted in conformity with the rules of law and propriety under the control, supervision and directions of the court there presiding, and

"It was not true that 'Prosecutor Jack White (meaning John B. White, prosecuting attorney) and Attorney Bill Donovan took turns at questioning her,'

because, in truth and in fact, John B. White, prosecuting attorney, referred to in said publication as 'Prosecutor Jack White,' took no part in the trial of said cause and did not, during the whole progress of said trial, ask or propound any question of or to any witness testifying therein, and

"It was not true that 'Boys of tender years' were among the parties attending at said trial, and

"It was not true that 'Donovan and White took it lightly,' or that they (meaning W. C. Donovan, the attorney appearing for the defendant at said trial, and John B. White, prosecuting attorney) smiled and winked at friends in the crowd,' and

"It was not, and is not true 'that such a thing [meaning the trial of the issue in said cause] as this shouldn't be aired in open court; because, under the constitutions and laws of the United States and of the state of Washington, the accused defendant in all criminal prosecutions is entitled to and guaranteed, among other things, 'a public trial,' and

"It was not and is not true that the presiding judge in such cause and trial should have called the said cause for trial in chambers (meaning in the privacy of the judge's personal quarters), because such proceeding would have been violative of the constitutional rights of the defendant, and

"Said false and grossly inaccurate article and alleged report so published was then and there published with the intent to prejudice, influence and embarrass the court, the jury and the counsel in the aforesaid case then pending; and did then and there prejudice, embarrass and influence the court, the jury, and the counsel in the aforesaid case then pending, and then and there did tend to prevent a fair and impartial trial of the aforesaid case then pending."

The overruling of the demurrer to the foregoing information is assigned as error. We think that subd. 7 of § 2372, *supra,* designates a particular kind of contempt which, if committed by a person, renders him guilty of a misdemeanor. This constitutes a criminal

misdemeanor, regardless of former definitions of common law contempt by this and other courts, relied upon by appellant, requiring some element of attempting to influence the court, obstruction of justice, or interference with the orderly procedure of the court contemned. The information sufficiently charges the defendant with publishing a false or grossly inaccurate report of the proceedings of a case then pending before the court. The publication of a false or grossly inaccurate report of the court's proceeding is made one of the offenses of criminal contempt by legislative action. We have no doubt that the language used by appellant in the publication as charged constitutes contempt under the above section of the code.

The appellant contends that the case of State v. Ballmaine could not be considered as then pending, for the complaining witness had testified prior to the offending publication; but the fact is that the trial proceeded several days after the publication.

The appellant contends that the court erred in denying the challenge to the sufficiency of the evidence, motion for a directed verdict, and motions in arrest of judgment and for a new trial. As there was competent evidence tending to impose guilt upon appellant, its weight and credibility were for the jury to pass upon. The admission of the publication by appellant, and evidence of its gross inaccuracy and the synchronous pendency of the action, were sufficient to sustain the verdict of the jury.

It is further contended that the refusal of requested instructions was erroneous. There is no merit in this contention. The judgment of the trial court is affirmed.

MOUNT, J., concurs.

PARKER, J. (concurring)—I concur with Judge Holcomb in his conclusion that the judgment of the trial court in this case must be affirmed. I fear, however, that his observations may be construed as evidencing a narrower view by the court of our criminal contempt statute than I am willing to assent to. As I view the statute, the language, "Publication of a false or grossly inaccurate report of its proceedings," when read in connection with the introductory paragraph of Rem. Code, § 2372, quoted at the beginning of Judge Holcomb's opinion is but the defining of a misdemeanor, the mere statutory name of which is "contempt of court." These defining words are not qualified by any words indicating that the publication must have reference to a pending proceeding in order to constitute the defined misdemeanor. As I view the statute, the defined misdemeanor is committed when there is a "publication of a false or grossly inaccurate report" of any court proceedings, whether pending at the time of such publication or concluded prior to such publication. I therefore think that Judge Holcomb's observations touching the pendency of the proceeding to which this publication related are unnecessary, and they suggest too narrow a view of the statute. If appellant had been charged with contempt and tried without a jury under Rem. Code, § 1049, apart from this criminal contempt misdemeanor statute, the pendency of the proceeding to which the publication related would have been a proper matter of inquiry.

MAIN, C. J., and FULLERTON, J., concur with PARKER, J.