[No. 23021. Department Two. August 18, 1931.]

THE STATE OF WASHINGTON, *on the Relation of F. O.*
*Dailey, Respondent, v.* A. E. DAILEY, *Appellant.*[1]

[1]Reported in 2 P. (2d) 79.

*John B. Fogarty,* for appellant.
*Lewis & Black,* for respondent.

BEALS, J.—From the opinion of this court in the case of *A. E. Dailey, Respondent, v. F. O. Dailey, Appellant,* 148 Wash. 668, 269 Pac. 1118, it appears that December 4, 1926, a decree was entered by the superior court for Snohomish county, denying Mr. A. E. Dailey's application for a divorce, dismissing his complaint with prejudice, and granting to Mrs. F. O. Dailey, for her support and maintenance, the sum of fifty dollars per month. This court, in the case cited, affirmed an order of the superior court denying Mrs. Dailey's application for an allowance by way of attorney's fees incurred in resisting an application by Mr. Dailey for an order modifying the award of separate maintenance. In the later case of *Dailey v. Dailey,* 154 Wash. 499, 282 Pac. 830, this court affirmed an order of the superior court dismissing another petition filed by Mr. Dailey, praying for a modification of the decree of separate maintenance, upon sustaining a demurrer to such petition. In the recent case of *Dailey v. Dailey,* 163 Wash. 104, 299 Pac. 988, other phases of the litigation between these parties were considered.

February 5, 1930, Mrs. Dailey, the relator, instituted this proceeding in the superior court for Snohomish county, for the purpose of procuring an order adjudging Mr. Dailey in contempt of court, and filed her affidavit stating that, in the prior action above referred to, the court had ordered Mr. Dailey to pay to her fifty dollars per month, commencing January 4, 1927, and that Mr. Dailey had paid nothing on account of the decree awarding her separate maintenance, save the sum of forty-seven dollars, which amount represented a judgment for costs recovered by

Mr. Dailey against Mrs. Dailey, and was, by order of court, offset against the amount due Mrs. Dailey under the decree of separate maintenance. Mrs. Dailey further stated in her affidavit that, since the entry of the decree above referred to, Mr. Dailey had been financially able to comply with the decree in whole or in part, but that he had willfully and contumaciously disobeyed the decree; the affidavit contained other statements as to Mr. Dailey's ability to earn money, and his contemptuous disregard of the court's order.

Upon filing the affidavit, the court made an order requiring Mr. Dailey to appear and show cause why he should not be adjudged to be in contempt of court, and be punished for such contempt according to law, and also requiring him to show cause why he should not comply with Mrs. Dailey's demand that he comply with the separate maintenance decree, in so far as his means might permit. A second order was issued by the clerk of the court, under its seal, reciting the issuance by the court of the order to show cause, and requiring Mr. Dailey to appear and show cause, as provided in the order signed by the judge.

The matter was tried to the court upon oral testimony, and resulted in findings to the effect that Mr. Dailey owed his wife, under the decree of separate maintenance, after allowing him certain credits, the sum of $2,115.95, with interest; that Mr. Dailey, since the entry of the decree, had, practically at all times, earned monthly sufficient money to enable him to pay Mrs. Dailey the allowance for her separate maintenance, and that, since the entry of the decree, his earning power had been ample to have enabled him to earn sufficient money to make such payments, but that Mr. Dailey had ''willfully and contumaciously disobeyed said decree, in that he has willfully failed, neglected and refused to make the payments or any

part thereof required by said decree," except as the court allowed him credits against the same. The court further found that Mr. Dailey's failure to comply with the decree was due solely to his contemptuous disregard thereof, and to his willful intent to disobey and not perform the same. The court further found

". . . that defendant had not now the ability to pay the said past due installments, or any part thereof, or any judgment entered against him by said decree of December 4, 1928."

In accordance with the findings, the court adjudged that A. E. Dailey was guilty of willful contempt of court, and ordered that he pay to the state of Washington a fine in the sum of two hundred fifty dollars and costs taxed at fifty dollars, and that he stand committed to the county jail until the fine and costs be paid or liquidated at the rate of three dollars for each day of imprisonment. From this judgment, Mr. Dailey appeals to this court, and Mrs. Dailey also appeals from the refusal of the trial court to include in the judgment a provision requiring Mr. Dailey to pay to her some reasonable amount to apply on his indebtedness to her under the decree of separate maintenance.

In this opinion, we shall refer to Mr. A. E. Dailey as the appellant, and relator as the respondent.

Appellant assigns error upon the ruling of the trial court denying him a jury trial; upon the receipt by the court of testimony offered by respondent as to occurrences prior to the rendition of judgments in prior proceedings instituted by respondent for the purpose of obtaining orders adjudging appellant to be in contempt; and last, upon the action of the trial court in requiring appellant to testify as a witness on behalf of respondent.

Appellant argues that this proceeding is a criminal contempt, under chapter 249, Laws of 1909,

p. 925, § 120 (Rem. Comp. Stat., § 2372), which provides that

"Every person who shall commit a contempt of court of any one of the following kinds shall be guilty of a misdemeanor: . . . (4) Willful disobedience to the lawful process or mandate of a court; .; . ."

This proceeding was in its nature both civil and criminal. Respondent sought relief by way of an order requiring appellant to pay her something on account of the money due her for separate maintenance under the decree of the court; and also asked that appellant be punished for his alleged willful and contumacious disregard of the court's order. The proceeding was properly instituted in the name of the state, and was not a mere application to the court in the prior case for relief by way of an order exercising the coercive powers of a chancellor. Evidence was received appropriate to both forms of proceeding, and in its judgment the court imposed what is clearly a punishment as for a criminal contempt, and refused to accord respondent any relief by way of a coercive order. We conclude, therefore, that the judgment entered by the superior court is, in effect, a judgment that appellant was guilty of a crime, and that the same is a judgment entered in a quasi-criminal proceeding.

This disposes of respondent's motion to dismiss appellant's appeal upon the ground that the bond filed by appellant is insufficient. This being an appeal in a criminal proceeding, no bond was necessary.

Appellant's contention that, the proceeding being in its nature essentially criminal, he was entitled to a jury trial, is not well taken. It has always been held that the power of the court to punish for such contempts as those defined in § 120 of the criminal

code above referred to, inheres in the court itself, and that on appropriate occasion such punishment may be summary. The dignity of the court and the necessity for its orderly procedure require that such be the rule, and it is manifestly incompatible with the proper and efficient exercise by a judicial tribunal of its necessary functions that the fact of whether or not a contempt of such a nature as is here presented has been committed, be submitted to some other tribunal for determination. This court, in the case of *State ex rel. Nicomen Boom Co. v. North Shore Boom & Driving Co.,* 67 Wash. 317, 121 Pac. 467, Ann. Cas. 1913D 456, held that, in such a contempt proceeding as was then before the court, the trial should be summary by the court without a jury. The court quotes from Cooley's Constitutional Limitations (6th ed.), p. 389, note 2, as follows:

"Cases of contempt of court were never triable by jury, and the object of the power would be defeated in many cases if they were."

We conclude, therefore, that article I, § 22, of the state constitution, relied upon by appellant, providing for trial by jury "in all criminal prosecutions," does not apply to such a proceeding as this, which is only quasi or incidentally criminal in its nature, and that the statutes of this state cited by appellant in support of his contention are not applicable.

Neither did the court err in receiving testimony as to occurrences prior to the entry of orders disposing of prior proceedings instituted by respondent in the original case, seeking to invoke the coercive powers of the court against appellant. Under the facts in the case at bar, all matters occurring since the entry of the decree awarding respondent separate maintenance were proper subjects of inquiry.

■ ˙Finally, appellant contends that the court erred in requiring appellant to testify against himself. This contention is well taken. In the early stages of English criminal jurisprudence, the accused was not allowed to testify at all; later, he was allowed to testify, but could not be required to do so; and it has for years been a fundamental principle of American criminal law that an accused cannot be required to testify against himself.

Article I, § 9, of our state constitution reads as follows:

"No person shall be compelled in any criminal case to give evidence against himself . . ."

The supreme court of the United States, in the case of *Gompers v. Bucks Stove & Range Co.*, 221 U. S. 418, 34 L. R. A. (N. S.) 874, held that, in a proceeding for criminal contempt, the presumption of innocence applies, and that the defendant cannot be compelled to testify against himself.

In the case at bar, respondent called appellant to the witness stand and examined him at length concerning the matters which were the subject matter of the inquiry. This was proper in a proceeding brought for the purpose of obtaining a coercive order establishing some civil contempt, but was improper in a proceeding by way of a criminal contempt. While we see no objection to combining the two proceedings, as was done here, it is undoubtedly the law that, where such a course is pursued, the rule that an accused may not be required to give testimony against himself must be observed, and that, if he be so compelled to testify, the power of the court to enter a purely punitive order cannot thereafter be invoked.

For the error of the trial court above referred to, the judgment appealed from must be reversed on ap-

pellant's appeal. As a new trial must be had, we refrain from discussing respondent's appeal, but leave the entire matter open for adjudication by the trial court upon the evidence which may be presented to it.

The judgment is accordingly reversed, and a new trial ordered.

TOLMAN, C. J., MILLARD, BEELER, and FULLERTON, JJ., concur.

