[No. 23653. Department Two. January 16, 1933.]

THE STATE OF WASHINGTON, *Respondent*, v. M. A. ZIONCHECK, *Appellant*.[1]

*M. A. Zioncheck*, for appellant.

*Robert M. Burgunder* and *Ben A. Maslan*, for respondent.

BEALS, C. J.—Appellant, M. A. Zioncheck, a member of the bar of this court, was, during the course of a trial before the Honorable Robert M. Jones, judge of

[1] Reported in 18 P. (2d) 35.

the superior court for King county, fined twenty-five dollars for contempt of court. From the order adjudging him guilty of contempt, Mr. Zioncheck appeals.

The record before us shows that the appellant was representing Walter Johnson and others, who were jointly accused, in two counts, with the offenses of riot and assault. As one of its witnesses, the state called one Charles Walters, who testified on direct examination that he had been in the employ of Bolcom Canal Lumber Company and of Seattle Cedar Lumber Manufacturing Company as jitney driver. The record then shows that the following occurred:

"Cross-examination by MR. ZIONCHECK: Q. You are a scab, aren't you, Mr. Walters? A. If you put it that way. MR. FIX: Just a minute. Object to the form— THE COURT: Yes, the objection is sustained. Mr. Zioncheck, you have no right to use names which tend to insult the witness. You are fined twenty-five dollars. MR. ZIONCHECK: Your honor, I did not intend to. THE COURT: I won't have any of it, and that is the ruling of the Court. MR. ZIONCHECK: I think if the court would instruct me I wouldn't use that terminology, but it is common terminology, I mean— THE COURT: It is not common terminology in this court. It is very uncommon and that is not to be used here. MR. ZIONCHECK: I did not use it for that purpose, your Honor. THE COURT: Well, then, what purpose did you use it for? MR. ZIONCHECK: That is the common terminology. THE COURT: The Court has ruled. You are fined. MR. ZIONCHECK: I except to the fine, your Honor. THE COURT: Oh, yes, you may except to it, but you stand committed until it is paid. MR. ZIONCHECK: May I go and get the money? THE COURT: You may do that at recess. MR. ZIONCHECK: Yes."

Appellant then proceeded with his cross-examination of the witness. After the jury had been excused for the noon recess, the following colloquy between court and counsel occurred.

"Mr. Zioncheck: Your Honor, I have that twenty-five dollars. I will pay it now if you want to collect. I want to make a specific objection, now that the jury is gone. The Court: Yes. Mr. Zioncheck: I want this noted upon the record here, that being fined for contempt upon the first word, or the first time the word 'scab' was used, without any warning or intimation that it could not be used, was absolutely prejudicial, being made by the Judge in front of the jury, intimating sympathy or bias on one side or the other and especially against the defendants. It would lead the jury to believe that, and there would be error made without first warning the attorney or anyone, or directing that such a word could not be used. The Court: That is not the reason for it. Mr. Zioncheck: I don't think it was, but that was the effect, your Honor. That was the effect. The Court: The reason is, the Court is obliged to keep order in the court room. Your attitude towards this witness is such that if the witness had used the same amount of freedom of will that you did you would have had an assault in the court room. Mr. Zioncheck: But, your Honor. He answered the question before you fined me for contempt. The Court: I don't know what his answer was. Mr. Zioncheck: He answered, yes, he was. The Court: You might have asked him if he was any other thing, without limiting yourself to the expletive, and you would have probably got the same result. Mr. Zioncheck: Your Honor, again, I want the record to show specifically that the word 'striker' is a common term and that the word 'scab' is a common term, and that people understand it in a way that no other word can be used, that at the time I used it, as no opprobrium. It was just a matter of designating a person as a person who worked at the mill after the strike had started. I could have used the word 'strike breaker.' Had your Honor intimated 'strike breaker' would have been the word, I would have so used it. I had no intention of using the word 'scab' at any time for the purpose of casting any reflection, other than designating a person, any man who works in a mill when people are on strike, who goes in to work after this strike must be biased,

and I broached it, your Honor, just to show his bias, and that is the only reason I broached it.''

At a later date the court entered the following order, from which this appeal is taken:

''BE IT REMEMBERED, that on the 24th day of November, 1931, the State by Deputy Prosecutor Lynwood Fix, did call one Charles Walters, as a witness to testify against the defendants who were active participants in a strike demonstration and picket line at the Seattle Cedar Lumber Company in Seattle, Washington; that upon the direct examination being closed with a question by the Deputy Prosecutor, asking said Charles Walters, if he was working at the Seattle Cedar Lumber Company upon the 17th day of September, of 1931, the day upon which the alleged riot and assault took place, which question was answered in the affirmative by the witness, whereupon attorney Marion Zioncheck, attorney for the defendants as his first question upon cross-examination, *in a manner insulting to the witness* asked as follows:

''Q. 'You are a scab, aren't you, Mr. Walters?' to which the witness answered, A. 'If you put it that way,' to which an objection was interposed and sustained, the Court summarily fining the attorney Zioncheck twenty-five dollars because of the use of such name as would intend to insult the witness, to which Mr. Zioncheck stated that he did not intend to use language to insult the witness and used the word 'scab' only as common terminology to bring out constructive bias of the witness, and excepted to the fine, the exception being granted; that the attorney Zioncheck being informed that he would stand committed until it was paid; that the said attorney subsequently and in the absence of the jury, asked that the fine be returned on the evening of the same day setting forth Webster's Dictionary's definition of the word 'scab,' which request was refused.

''THEREFORE IT WAS THEN, TO-WIT, ON NOVEMBER 24TH, 1931, ORDERED, ADJUDGED AND DECREED, That said M. A. Zioncheck be and he is hereby adjudged to be

guilty of contempt of court, and he is hereby finally ordered to be punished by the payment of the fine.

"DONE in open Court this 4th day of December, 1931.                    ROBERT M. JONES, Judge."

Appellant contends that the court erred in adjudging him in contempt of court and fining him, for the reason that appellant's conduct was not such as falls within the purview of the statute applying to such a situation, appellant also contending that the order appealed from does not state jurisdictional facts necessary to constitute contempt of court. It is, of course, clear that appellant had never been instructed by the court that the word "scab" should not be used, and appellant argues here, as he did to the trial court, that, in the absence of any such warning, he was not subject to fine for using the word under the circumstances disclosed by the record.

The statutes applicable are Rem. Rev. Stat., § 52, subdiv. 3, Rem. Rev. Stat., §§ 1049, 1050 and 1051, and Rem. Rev. Stat., § 2372; the order appealed from having evidently been prepared in view of Rem. Rev. Stat., § 1051, which reads as follows:

"When a contempt is committed in the immediate view and presence of the court or officer, it may be punished summarily, for which an order must be made reciting the facts as occurring in such immediate view and presence, determining that the person proceeded against is thereby guilty of contempt, and that he be punished as therein prescribed."

■ Without going into a technical analysis of the meaning of the word "scab" as applied to one who has accepted an employment relinquished by a striker, we are of the opinion that the word is, as so employed, a term of contempt and reproach. *State v. Christie,* 97 Vt. 461, 123 Atl. 849, 34 A. L. R. 577; *U. S. v. Talia-*

*ferro,* 290 Fed. 214; *Prince v. Socialistic Co-operative Pub. Ass'n.,* 64 N. Y. Supp. 285.

It cannot of course be held that an attorney must be warned by the court not to use improper language in addressing either the court, opposing counsel or a witness. Counsel must be presumed to know the meaning of the words they use, and must be held responsible therefor.

■ Appellant cites the case of *State ex rel. Martin v. Pendergast,* 39 Wash. 132, 81 Pac. 324, in which this court held that, in every case of contempt, the facts constituting the alleged contempt must appear of record either in the order made or in some affidavit properly presented to the court. In this case, the facts are clearly stated in the order from which this appeal was taken.

Appellant argues that, in the case of *State v. Buddress,* 63 Wash. 26, 114 Pac. 879, this court held that an order adjudging an attorney in contempt must be attested by the clerk of the court. We do not find that the case cited goes to any such length, and we hold that the order now before us is sufficient in form.

■ It is, of course, necessary to the orderly presentation of causes that the trial court have power to punish summarily for a contempt committed in its presence. *State ex rel. Dysart v. Cameron,* 140 Wash. 101, 248 Pac. 408, 54 A. L. R. 311. In such cases, the party against whom the charge of contempt is laid is not entitled to a trial by jury, nor may he submit the question of whether or not he was guilty of contempt to some other tribunal for determination. *State ex rel. Dailey v. Dailey,* 164 Wash. 140, 2 P. (2d) 79.

■ It is, of course, true that, from such an order as is here complained of, an appeal lies to this court. The fact that such an order may be reviewed on appeal

necessarily implies the right of the person adjudged in contempt to be heard by the trial court and to make a record upon which the order may be reviewed; but we find in the case at bar no application on the part of appellant whereby appellant sought to present to the superior court anything in explanation, excuse or extenuation, save those matters regularly included in the record now before us. Appellant did not ask to be allowed to make any explanation or showing other than that which he made.

In such a case as this, much depends upon the manner, expression and attitude of the party adjudged in contempt in addressing the court or other person in using the language held improper. A finding of contempt is not necessarily based alone upon the language used. The contempt may largely exist in the manner in which the words are spoken, and appellate courts are necessarily slow to reverse a finding of contempt by a trial court who is naturally in a much better position than is this court to determine whether or not a contempt was actually committed.

In the colloquy which occurred between court and counsel almost immediately after the fine was imposed, the trial court referred to the necessity of keeping order in the court room, and stressed appellant's attitude toward the witness. The word "attitude" includes more than the mere use of words, and it is evident that the court based its summary order upon something more than the language used by appellant as shown in the written record before us. In the formal order from which appellant appeals, the court found that appellant used the language which the court found objectionable "in a manner insulting to the witness." We cannot disregard this portion of the order, nor do we find in the record anything which contradicts

the same or which may properly be considered in extenuation.

In his brief, appellant refers to the heat and excitement of such a trial as that in which he was engaged (which resulted, it may be noted in passing, in the acquittal of·his clients), but such circumstances do not excuse any breach of the proprieties which must always be observed by officers of the court.

We find in the record nothing which requires reversal of the order appealed from, and the same is hereby affirmed.

TOLMAN, STEINERT, and MAIN, JJ., concur.

## ON REHEARING.

[*En Banc.* June 6, 1933.]

PER ·CURIAM.—Upon a rehearing *En Banc*, a majority of the court adhere to the Departmental opinion heretofore filed herein.