THE STATE OF WASHINGTON, *Respondent,* v. SYDNEY
SANCHEZ, *Appellant.*[1]

*Ralph H. Higgins* and *Jerry Finch,* for appellant.

*B. Gray Warner* and *John C. Merkel,* for respondent.

SIMPSON, J.—This appeal grows out of a filiation pro-
ceeding which resulted in a final judgment entered
October 30, 1939.

The judgment decreed that appellant was the father
of an illegitimate child, for whose care he was adjudged
to pay into the registry of the court the sum of twenty

[1]Reported in 104 P. (2d) 464.

dollars forthwith and the sum of twenty dollars per month thereafter, such payments to continue until the child should attain the age of sixteen years.

November 21, 1939, John C. Merkel, deputy prosecuting attorney for King county, presented to the court a motion supported by his affidavit to the effect that appellant had "wholly failed and refused to comply with said order," and obtained an order to show cause "why he should not be adjudged and convicted of a contempt of court."

In response to the show cause order, appellant filed an answer, which alleged, *inter alia:*

"That since the entry of said judgment affiant has not had the sum of $20.00 for any purpose whatever, and does not have a single dollar to-day.

"That affiant is a married man and lives with his wife, Elizabeth Sanchez, at 123 Second Avenue, North, in the city of Seattle, State of Washington. That he has been married to his present wife for more than 20 years last past.

"That for about 10 years previous to the year 1937 affiant was a hotel clerk, never making more than $100 per month, and spending the entire amount in the support of his family. That during that period he accumulated no savings whatever."

Appellant further alleged that, from May, 1937, until the date of the trial in the filiation proceedings, he was employed by the Alaska Steamship Company, but that he expended the entire amount of those earnings in the support of his family and accumulated no savings; that he lost this job on the day the trial in that action began, due to no fault of his own; and that ever since he has been unable to find employment.

Trial was had, and the court entered an order which reads:

"ORDERED, ADJUDGED AND DECREED that the defendant *is guilty of a contempt and* shall pay the sum of fifty dollars ($50.00) within one week from the date of this

hearing and upon his failure to do so shall be committed to the King County jail until he shall comply with the order of this court."

Appellant gave notice of appeal, but did not give an appeal bond, as required in civil actions. Respondent moves to dismiss the appeal for the reason that the case is civil in nature and requires the giving of a proper appeal bond.

Appellant contends that these proceedings are criminal in nature; that an appeal bond is not, therefore, required; and that he cannot be punished for contempt because the evidence shows that he has access neither to money, nor to property from which money may be realized, with which to meet the obligation imposed upon him by the judgment in the prior action.

It thus appears that the parties to this appeal have raised the questions of whether the nature of the proceeding is civil or criminal, i. e., whether its sole purpose was remedial and coercive, or whether it was intended to be punitive in whole or in part, and of whether inability is a defense to a proceeding for contempt for failure to comply with an order of the court which has been successfully raised by appellant.

We are, however, unable to dispose of either of these questions conclusively, for the reason that the trial court failed to make and to enter findings of fact and conclusions of law upon which to rest its judgment of contempt, in conformity with the rule announced in *State ex rel. Dunn v. Plese*, 134 Wash. 443, 235 Pac. 961.

It is true that the stated rule was enunciated by this court in terms of an action for contempt which was denominated as civil rather than criminal; and that it is not clear whether the requirement was intended to be applicable, also, to contempt proceedings which are criminal in nature because their object, in whole or in part, is punitive, rather than coercive and remedial.

It must be remembered, however, that, although contempt proceedings are often classified, for purposes peculiar to the particular action, as being civil rather than criminal in nature, or vice versa, such actions are always more accurately described as being *sui generis,* and that in no case will a contempt proceeding partake of all of the attributes of either civil or criminal litigation.

In many cases, it becomes apparent, in undertaking this classification, that the line of demarcation is exceedingly hazy, that no determinative clue to the object of the action is to be found in the character of the act punished, or even in the proceedings which bring the accused to trial, and that the choice must be made solely in terms of what appears to have been the purpose of the final order of the trial court. *Gompers v. Bucks Stove & Range Co.,* 221 U. S. 418, 55 L. Ed. 797, 31 S. Ct. 492, 34 L. R. A. (N. S.) 874; *Lamb v. Cramer,* 285 U. S. 217, 76 L. Ed. 715, 52 S. Ct. 315; *Root v. MacDonald,* 260 Mass. 344, 157 N. E. 684, 54 A. L. R. 1422.

It may also be the case, as was true in *State ex rel. Dailey v. Dailey,* 164 Wash. 140, 2 P. (2d) 79, that the proceeding is both civil and criminal in its nature. The case last cited illustrates another unique feature of contempt proceedings: Even though it be established that the purpose of the action is, in whole or in part, punitive, and therefore criminal in nature, the putative contemnor is not entitled to trial by jury.

For these reasons, and because the arguments set forth in *State ex rel. Dunn v. Plese, supra,* are at least equally persuasive where the action is partially or wholly criminal in character, we conclude that findings of fact and conclusions of law are requisite to valid judgment in all contempt actions of this character, whether classified as civil or criminal.

In the instant case, it will be observed that

neither the motion, the show cause order, nor the written judgment of the trial court, indicates conclusively whether the purpose of the action was to punish appellant for failure to obey the judgment of the court in the filiation proceeding, to compel compliance with that judgment under the provisions of Rem. Rev. Stat., § 1979-2 [P. C. § 7411-12], or to do both. At the time the final order in the contempt proceeding was entered, appellant was in arrears only one payment of twenty dollars under the prior judgment. The final order, however, compelled the payment of fifty dollars, two and one-half times the amount of his accrued indebtedness. Nowhere in the record do we find that the amount was, if paid, to be deposited in court for the benefit of appellant's illegitimate child.

In view of these facts, and under the existing state of the record, we are inclined to consider, for present purposes, that this proceeding is criminal in nature, and that the jurisdiction of this court has not failed for want of a cost bond upon appeal. *State ex rel. Dailey v. Dailey, supra.* The disposition which we are making of this case, however, impels us to reserve the right to re-examine the question raised by respondent's motion to dismiss the appeal, should the case, amplified by appropriate findings of fact and conclusions of law, again come before us.

As it now stands, the final order in this action cannot be sustained. The case is reversed, and remanded with instructions to the trial court to make findings of fact and conclusions of law.

BLAKE, C. J., STEINERT, MILLARD, and ROBINSON, JJ., concur.