[No. 34315. Department One. March 21, 1958.]

ANNA KELLER, *Respondent,* v. WILLIAM KELLER, *Appellant.*[1]

[1]Reported in 323 P. (2d) 231.

*Olwell & Boyle* and *Rummens, Griffin, Short & Cressman*, for appellant.

*Kennett, McCutcheon & Soderland* and *Robert C. Wells*, for respondent.

WEAVER, J.—This is a contempt of court proceeding arising in a divorce action. Defendant husband appeals from an "Order Revoking 'Suspension of Sentence' and Directing the Issuance of a Warrant of Arrest." Defendant was released from custody, under bond, pending appeal to this court.

The ultimate facts that we need consider are these:

July 5, 1956, the court adjudged defendant in contempt for failure to comply with previous orders of the court. The court found that defendant "had the means and property available from which" certain support money payments could have been paid. He was sentenced to serve six months in the county jail. The sentence was suspended, provided defendant would (a) remove himself forthwith from the premises occupied by the community; (b) pay certain moneys into the registry of the court for the support of his wife, in accordance with a schedule set forth; and (c) not molest his wife during the pendency of the divorce action.

The order further provided that, if defendant failed to comply with these conditions, the "suspension of sentence" would be revoked, a warrant would issue for his arrest, and he would be committed to the county jail for a period of six months.

The order of July 5, 1956, also provided that when

". . . he [defendant] can establish to this court that he has complied with all the aforementioned conditions, he may apply to this court to be purged of his said contempt of this court, and shall be entitled to be purged of his said contempt, provided he has fully complied with all subsequent orders entered in this court and cause."

April 17, 1957, the wife's motion for revocation of the suspended sentence came on for hearing before another de-

partment of the superior court. It resulted in the entry of an order committing defendant husband to jail for six months. It is from this order that defendant appeals.

It will be helpful if we analyze certain statutes and decisions of this court before referring to appellant's assignments of error.

■ In general, contempt proceedings in this jurisdiction may be placed in three categories: (a) criminal contempt prosecuted under RCW 9.23.010; (b) civil contempt initiated under RCW 7.20.010 *et seq*; and (c) contempt proceedings resulting from the long-exercised power of constitutional courts (1) to punish summarily contemptuous conduct occurring in the presence of the court, (2) to enforce orders or judgments in aid of the court's jurisdiction, and (3) to punish violations of orders or judgments.

(A) RCW 9.23.010 lists eight particular contempts which constitute misdemeanors and are punishable as such. *State v. Angevine*, 104 Wash. 679, 177 Pac. 701 (1919); *State v. Lew*, 25 Wn. (2d) 854, 172 P. (2d) 289 (1946); and *State v. Boren*, 42 Wn. (2d) 155, 253 P. (2d) 939 (1953), are illustrative of this category. In all three cases, contempt proceedings were initiated by information filed by the prosecuting attorney. In the *Boren* case, *supra*, we held that the accused was entitled to a jury trial because, being charged with a criminal offense (a misdemeanor), he was guaranteed, by our state constitution, the right to trial by jury. In the *Angevine* case, *supra*, the accused was tried and convicted by a jury. In the *Lew* case, *supra*, we held that the accused had been properly charged with a crime, having willfully violated an order entered in a civil proceeding. Such prosecutions have usually been referred to as criminal contempt proceedings.

(B) RCW 7.20 has, on some occasions, been referred to as the "general contempt statute" (*State v. Boren, supra*) and, on other occasions, as the "civil contempt statute." In one case, the statute is designated as "quasi or incidentally criminal in nature" (*State ex rel. Dailey v. Dailey*, 164 Wash. 140, 2 P. (2d) 79 (1931)) and, in another, as "more

accurately described as being *sui generis.*" *State v. Sanchez,* 4 Wn. (2d) 432, 435, 104 P. (2d) 464 (1940).

RCW 7.20.010 sets forth twelve acts and omissions that are deemed to be contempts of court. The first two sections apply to acts or omissions occurring *in the presence* of the court; the remainder, to acts or omissions occurring *outside* "the immediate view and presence of the court."

If the contempt is committed in the presence of the court, it may be punished summarily (RCW 7.20.030); if committed outside the presence of the court, the statute outlines the procedure by which the matter may be brought to the attention of the court by affidavit, which may result in a show cause order or a warrant of arrest. RCW 7.20.040. The statute does not designate by whom this affidavit may be filed; however, RCW 7.20.060 provides:

"In the proceeding for a contempt, the state is the plaintiff. In all cases of public interest, the proceeding may be prosecuted by the district attorney on behalf of the state, and in all cases where the proceeding is commenced upon the relation of a private party, such party shall be deemed a co-plaintiff with the state."

Thus, it would appear that, although "the state is the plaintiff," the proceeding may, under proper circumstances, be initiated by a private party.

While conviction under 9.23.010 is entirely punitive, judgment of contempt under RCW 7.20 may be both coercive and punitive. If the contempt consists of the omission or refusal to perform an act, "which is [so says the statute] yet in the power of the defendant to perform," he may be imprisoned until he shall have performed it (RCW 7.20.110); but this section does not appear to be mandatory. The punitive provisions of RCW 7.20 are set forth later in this opinion.

Under RCW 7.20, the contemnor is not entitled to a jury trial. *State ex rel. Dailey v. Dailey,* 164 Wash. 140, 2 P. (2d) 79 (1931); *State v. Zioncheck,* 171 Wash. 388, 18 P. (2d) 35 (1933); *Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 423, 63 P. (2d) 397 (1936); *State v. Boren,* 42 Wn. (2d) 155, 159, 253 P. (2d) 939 (1953).

In a large measure, this court is responsible for a certain amount of confusion, because we have not always made plain and definite the distinction between RCW 9.23.010 and RCW 7.20. See *State v. Boren, supra.* The similarity between the two statutes is apparent; in many respects, they parallel each other. The same act may constitute contempt of court under both statutes.

The fundamental distinctions are these:

RCW 9.23.010 is a criminal statute—it is punitive; proceedings thereunder must be instituted in the name of the state by the prosecuting attorney; the accused is entitled to a jury trial.

On the other hand, proceedings under RCW 7.20 may be both coercive and punitive. Although the "state is the plaintiff," proceedings may be initiated by either the prosecuting attorney or a private party, and the contemnor is not entitled to a jury trial.

(C) The third category of contempt proceedings—the power to enforce orders and judgments and to punish for contempt for disobedience of mandates — is an inherent power of a constitutional court.

"The power comes into being upon the very creation of such a court and remains with it as long as the court exists. Without such power, the court could ill exercise any other power, for it would then be nothing more than a mere advisory body. . . .

"The power to punish for contempt of court being essential to the efficient action of the court and the proper administration of justice, it is lodged permanently with that department of government, and the legislature may not, by its enactments, deprive the court of that power or curtail its exercise." *Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 423, 63 P. (2d) 397 (1936), and cases cited.

Appellant's assignments of error raise two questions that were well stated by appellant's counsel in his closing argument to this court. He said:

"We are not standing before this court and disputing the power of the superior court to enforce its orders. Our dispute in this case is over the *procedure followed* and in the *extent of the punishment.*" (Italics ours.)

First, we consider the procedure.

Appellant could have been charged with contempt by reason of RCW 9.23.010 (4), because his conduct, which culminated in the order of July 5, 1956, constituted "wilful disobedience to the lawful process or mandate of a court." He could have been charged under the general contempt statute, for his conduct constituted "disobedience of any lawful judgment, decree, order, or process of the court." RCW 7.20.010 (5). Instead, he was brought before the court in the original action, by show cause order issued by reason of the inherent power of the court, (a) to enforce its judgments in aid of the court's jurisdiction and (b) to punish for contempt. Appellant's wife chose to sign an affidavit in support of a motion for issuance of an order of contempt and filed it in the original action. She did not choose to proceed against appellant under the provisions of RCW 7.20 or RCW 9.23.010.

The remedy sought was fundamentally coercive. Appellant's wife wished to be free of molestation; she needed the support money previously ordered paid. It is apparent that the movant, at the inception of this contempt proceeding for the breach of existing orders of court, had a certain limited choice. If, however, the *sole* purpose and result of this contempt proceeding had been criminal and punitive in nature, the movant's choice would have disappeared and it would have been necessary to bring the action in the name of the state. *In re Harrington's Estate,* 163 Wash. 516, 1 P. (2d) 850 (1931).

Appellant's contention that the contempt proceedings are void because they were not instituted in the name of the state, pursuant to RCW 7.20.060, quoted *supra,* is not well taken. The question presented does not challenge the jurisdiction of the court to proceed in the manner in which it did. *Cogswell v. Cogswell,* 50 Wn. (2d) 597, 313 P. (2d) 364 (1957).

Next, we consider the validity of the six-month jail sentence.

On at least two occasions, although the question was

stated in our opinions, this court found it unnecessary to pass upon the propriety of a sentence of imprisonment for a fixed term in civil contempt proceedings, the purpose of which was coercive and not punitive. *Corrigeux v. Corrigeux,* 37 Wn. (2d) 403, 404, 224 P. (2d) 343 (1950); *Pearce v. Pearce,* 37 Wn. (2d) 918, 923, 226 P. (2d) 895 (1951). In both cases, we held that the conduct complained of was not a proper subject of contempt proceedings.

As we have previously observed, the order of July 5, 1956, was fundamentally coercive in nature. Although appellant was adjudged in contempt of court and sentenced to six months in jail, his confinement was suspended on the condition that he move from the community premises, make certain support-money payments, and not molest his wife.

Appellant carried the key to his freedom. He chose to throw it away. He molested his wife and did not make the support-money payments according to schedule, although it is admitted that the community was worth more than one hundred thousand dollars.

In a civil proceeding, the right of a constitutional court to exercise inherent contempt powers resulting in confinement for a fixed term is one which must be exercised with the greatest discretion and restraint, for it is capable of arbitrary and capricious abuse. Constitutional prohibitions against cruel and unusual punishment and excessive fines provide the extreme limits of the court's discretionary powers. It would be difficult, however, if not impossible, to lay down a rule which would adequately anticipate and satisfactorily dispose of all factual situations. We do not find it necessary in this case to attempt it.

■ The inherent right of the court to exercise contempt powers in a civil proceeding that results in confinement for a fixed period is *at least equal* to the statutory contempt powers set forth in RCW 7.20.020, which provides as follows:

"Every court of justice, and every judicial officer has power to punish contempt by fine or imprisonment, or both. But such fine shall not exceed three hundred dollars, nor the imprisonment six months; and when the contempt is not

of those mentioned in RCW 7.20.010 (1) and (2) [contempt committed within the immediate view and presence of the court], *it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby,* before the contempt can be punished otherwise than by a fine not exceeding one hundred dollars." RCW 7.20.020. (Italics ours.)

The rights of appellant's wife were prejudiced by appellant's molestation of her (*Cogswell v. Cogswell, supra*) and by his refusal to make support-money payments as directed. Under RCW 7.20.020, this is sufficient to invoke a judgment of imprisonment not to exceed six months; hence, we cannot say that the court abused its discretionary power when it sentenced appellant to six months in jail.

This being a civil contempt proceeding under the inherent power of the court (as distinguished from contempt proceedings under RCW 7.20), the contemnor may purge himself of contempt during the fixed period of his confinement, or he may elect to serve out the fixed term.

If the contempt consists of the omission or refusal to perform an act which is still in his power to perform—such as the payment of support money—he is entitled to release upon performance before the expiration of his fixed term of confinement. See *State ex rel. Kibbe v. Rummel,* 36 Wn. (2d) 244, 252, 217 P. (2d) 603 (1950).

A more difficult situation exists if the contempt consists of the breach of a prohibited act that cannot be undone. In such a situation, it must be left to the considered discretion of the trial court to decide whether the contemnor has purged himself of contempt by his subsequent conduct and attitude.

Finally, we do not agree with appellant's contention that the trial court abused its discretion when it failed to consider the fact that appellant's wife, *after she signed* the affidavit supporting a motion to revoke the suspension of the six-month jail sentence, changed her mind and expressed the wish that appellant not be committed to jail. Appellant's noncompliance with the order of July 5, 1956, not only prejudiced her rights (which she may elect to waive), but also constituted contemptuous conduct toward

the court (which is not within her right to waive). The court could have cited appellant for contempt on its own motion. See *Cogswell v. Cogswell,* 50 Wn. (2d) 597, 313 P. (2d) 364 (1957).

The order is affirmed.

HILL, C. J., MALLERY, FINLEY, and OTT, JJ., concur.