[No. 43730.    En Banc.    July 22, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. RALPH
WILLIAMS' NORTH WEST CHRYSLER PLYMOUTH, INC.,
ET AL, *Appellants*.

*James C. Young, Ronald L. Hartman,* and *Caidin, Kalman, Hartman & Sampson,* for appellants.

*Slade Gorton, Attorney General,* and *Barbara Rothstein, Thomas L. Boeder,* and *John R. Ellis, Assistants,* for respondent.

HAMILTON, J.—Appellants, Ralph Williams, Ralph Williams, Inc., and Ralph Williams' North West Chrysler Plymouth, Inc., appealed two superior court orders which found them in contempt of court and imposed sanctions for the contempt. On December 9, 1974, the trial court entered its judgment and order concerning restitution upheld in *State v. Ralph Williams' North West Chrysler Plymouth, Inc.,* 87 Wn.2d 298, 553 P.2d 423 (1976), the main action. Appellants filed their appeal on the merits on December 27, 1974. Appellants did not supersede the trial court judgment and restitution order.

The restitution order gave appellants 15 days to place $142,000 in a trust account in a King County bank. Appellants did not establish the trust account within the 15-day time period. Respondent, the State of Washington, filed a motion and affidavit for an order to show cause why appellants should not be held in contempt of court. Respondent also instituted proceedings to discover appellants' assets for the purpose of satisfying the restitution order in the main action. The court heard these motions on January 20, 1975, and appellants were represented by counsel at this hearing. The court ordered appellants to produce certain documents

and to appear for an examination of their property. The court also ordered appellants to show cause why they should not be held in contempt of court.

The trial court set the hearing on the two orders for March 21, 1975. Respondent notified appellants' counsel of the hearing date. On March 21, 1975, in the presence of appellants' counsel, the trial court entered an order finding appellants in contempt for their failure to establish the trust account and to appear for the ancillary proceedings. The court gave appellants 15 days to purge the contempt. Appellants appealed the contempt order.

Appellants' failed to purge themselves of the contempt. On April 7, 1975, the trial court entered an order imposing sanctions for the contempt. The order imposed "a continuing fine of $100 a day . . . on each defendant for each Order not complied with comprising a total fine of $200 per day per defendant until such time as defendants comply with the court's Orders." Appellants also appealed the order imposing sanctions. The two appeals were consolidated.

■ Initially, appellants challenge the power of the trial court to order appellants to establish the trust account. Appellants claim the trial court cannot base contempt orders and sanctions on the failure to comply with the restitution order. In *Mead School Dist. 354 v. Mead Educ. Ass'n*, 85 Wn.2d 278, 280, 282, 534 P.2d 561 (1975), we discussed the traditional test for determining when a party may disregard a judicial order.

"[W]here the court has jurisdiction of the parties and of the subject matter of the suit and the legal authority to make the order, a party refusing to obey it, however erroneously made, is liable for contempt." *Dike v. Dike*, 75 Wn.2d 1, 8, 448 P.2d 490 (1968), quoting *Robertson v. Commonwealth*, 181 Va. 520, 536, 25 S.E.2d 352, 146 A.L.R. 966 (1943); *Deskins v. Waldt*, 81 Wn.2d 1, 5, 499 P.2d 206 (1972). . . .

In most circumstances the application of this principle is relatively straightforward, and the distinction between errors of law and arrogations of power fairly easy to draw. Where it has not been courts have compounded it

and fashioned the concept of "jurisdiction to determine jurisdiction." . . .

. . . The "jurisdiction" test measures whether a court, in issuing an order or holding in contempt those who defy it, was performing the sort of function for which judicial power was vested in it. If, but only if, it was not, its process is not entitled to the respect due that of a lawful judicial body. "Only when a court is so obviously traveling outside its orbit as to be merely usurping judicial forms and facilities, may [its order] be disobeyed and treated as though it were a letter to a newspaper."

(Some citations omitted.)

The court possessed the judicial power to enter the order concerning restitution. RCW 19.86.080 of the Consumer Protection Act directs the court to "make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any act herein prohibited or declared to be unlawful." Appellants must give this judicial process respect, and the failure to do so constitutes a valid basis for holding them in contempt.

Also, in *State v. Ralph Williams' North West Chrysler Plymouth, Inc., supra,* we expressly approved the trial court's restitution order. The order is consistent with the legislative guidelines of RCW 19.86.080. It is designed to protect appellants' rights and carry out the required restitution of funds.

■ Appellants interpret the order concerning restitution as essentially an order to pay money. Appellants claim the trial court cannot find them in contempt for their failure to pay money. We disagree. The restitution order does not direct appellants to pay any money to respondent. The purposes of the order are to set up a trust account and to effectuate the return of consumer property in appellants' unlawful possession. The court may enforce, by contempt proceedings, an order for the payment of a specific fund. 17 C.J.S. *Contempt* § 13 (1963). Appellants do not suggest that they are unable to pay the funds into the trust account.

They merely refuse to comply with the restitution order. A court may enter a contempt order for the refusal to comply with an appropriate judgment. *See Keller v. Keller*, 52 Wn.2d 84, 323 P.2d 231 (1958).

In *Arnold v. National Union of Marine Cooks & Stewards Ass'n*, 42 Wn.2d 648, 257 P.2d 629 (1953), plaintiffs recovered a $475,000 judgment against defendants. Plaintiffs instituted supplemental proceedings, and the trial court ordered defendants to pay $298,000 of out-of-state funds into a receivership. The trial court entered the order to prohibit defendants from dissipating these assets. Defendants did not comply with this order, and the trial court found them in contempt of court. We affirmed the trial court's contempt judgment. *Arnold v. National Union of Marine Cooks & Stewards Ass'n, supra* at 654. Our decision in the *Arnold* case supports our position in this case.

The filing of the appeal on the merits did not deprive the trial court of subject-matter jurisdiction to enter the contempt and sanction orders. A trial court may not alter its orders or judgments once a party files an appeal. A court, however, may commence proceedings to enforce a judgment. In *Ryan v. Plath*, 18 Wn.2d 839, 855-56, 140 P.2d 968 (1943), we stated:

> The purpose of a supersedeas bond is to stay further proceedings in the superior court (Rem. Rev. Stat., § 1722 [P. C. § 7296]), and the failure to give such bond simply permits the enforcement of the judgment or decree by execution, attachment, garnishment, *contempt proceedings*, or some other appropriate form of process. Failure to supersede a judgment or decree, however, in no way affects the right of the appealing party to obtain review of the proceedings which led to such judgment or decree.

(Citations omitted. Italics ours.)

If appellants desired to stay the superior court proceedings, they could have filed a supersedeas bond. *See Arnold v. National Union of Marine Cooks & Stewards Ass'n, supra* at 649; CR 62(d); ROA I-23.

Appellants' next contention is also jurisdictional. They claim the superior court did not acquire personal

jurisdiction over them, because they were not personally served with the show cause order. The court acquired personal jurisdiction over appellants for the trial on the merits. We consider the restitution proceedings in the instant case a continuation of the trial on the merits. The trial court must maintain continuing jurisdiction for the purpose of carrying out the legislative intent of RCW 19.86.080. This provision directs the court to restore property to all aggrieved consumers. Appellants, however, must receive actual notice of the restitution proceedings and any related contempt proceedings. In *In re Koome*, 82 Wn.2d 816, 821, 514 P.2d 520 (1973), we held:

> [I]n the context of contempt proceedings relating to alleged disobedience or defiance of a lawful judgment, decree, order, or process of a court by one directly bound thereby or in privity thereto, that it is unnecessary that the one charged be personally served with a copy of the order. It is sufficient if the alleged contemnor has knowledge of the order and its legal effect.

(Citation omitted.)

An examination of the record establishes the actual knowledge requirement. Appellants' counsel filed a brief, appeared, and argued for a denial of the show cause motion. Appellants' counsel also appeared and opposed the contempt and sanction orders on March 21 and April 7, 1975. These actions clearly indicate that appellants had actual knowledge of the orders relating to their contempt and were fully cognizant of the legal consequences of such orders.

The ancillary proceedings are also a continuation of the trial on the merits. In *Arnold v. National Union of Marine Cooks & Stewards Ass'n, supra* at 652-53, we examined the nature of a supplemental proceeding.

> In *Turner v. Holden*, 109 N. C. 182, 13 S. E. 731, the defendant entered a special appearance attempting to dismiss supplemental proceedings on the ground there had never been proper service of process. The supreme court of North Carolina rejected defendant's contention,

distinguishing between the necessity for service of process and notice, as follows (p. 184):

"The Court had jurisdiction of the defendant by virtue of the service of the summons, the original process, and his appearance in the action. The action was not ended for all purposes when the plaintiff obtained his judgment; it remained, and remains, current for all proper purposes in the enforcement of the judgment by the ordinary execution and other appropriate means, including proceedings supplementary to the execution. The latter are not separate from and independent of the action; they are incident to and part of it; they constitute and are no more than a means allowed by the statute in the action whereby to reach the property of the defendant and enforce satisfaction of the judgment. *Hence, they are not begun by original process, a summons* . . .

"The Court has jurisdiction in cases like this of the party to the action, and it is deemed sufficient to give him notice in the way prescribed of any motion or proceeding in the action. It is the duty of parties to actions to be on the alert at all times, until the same shall be completely ended." (Italics ours.)

We affirm the position consistently adhered to in this jurisdiction that supplemental proceedings are not a new and independent action but are merely a continuation of the original or main action and are auxiliary thereto.

(Citations omitted.)

█ Respondent personally served appellants' counsel with the ancillary proceeding order. The record clearly indicates appellants had actual notice of these proceedings. Appellants, however, point to RCW 6.32.130[1] (proceedings supplemental to execution) and contend that in the context of this case, that statute requires personal service in the instant ancillary proceedings. We do not agree. The pro-

---

[1] "An injunction order or an order requiring a person to attend and be examined made as prescribed in this chapter must be served,—

"(1) By delivering to the person to be served a certified copy of the original order and a copy of the affidavit on which it was made;

"(2) Service upon a corporation is sufficient if made upon an officer, to whom a copy of a summons must be delivered. Where an order is personally served upon a corporation, unless the officer to be served is specially designated in the order, the order may be served upon any person upon whom a summons can be served." RCW 6.32.130.

ceedings, although characterized as supplemental proceedings, were not in fact such in the traditional sense. In normal supplemental proceedings the prevailing party only seeks to discover the other party's property in order to satisfy a judgment. *Field v. Greiner*, 11 Wash. 8, 11, 39 P. 259 (1895). The proceedings in this case were conducted contemporaneously with and in aid of respondent's efforts to obtain compliance with the order of restitution authorized by RCW 19.86.080. RCW 19.86.080 permits the trial judge to "make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property." Such authority is broad enough to comprehend ascertainment of appellants' current assets and determine whether they are in possession of property sufficient to comply with the restitution order. The restitution order sets up an efficient procedure to effectuate the return of consumer property in appellants' unlawful possession. The order also affords appellants an opportunity to challenge each restitution award before a court-appointed master and ultimately before the trial judge. As such, the ancillary proceedings stand in pari materia with enforcement of the restitution order and, with actual knowledge thereof, continuing jurisdiction over appellants arising from the case in chief remains.[2]

---

[2]Two additional assignments of error concern the ancillary proceedings. Each of the assignments are unpersuasive.

Appellants cite King County Local Rule 12 (d) (1), which directs the motion judge to hear all supplemental proceedings. The motion judge did not conduct the ancillary proceedings. The observance of local rules are within the discretion of the court. It is normally not reversible error to decline to follow a particular rule. Furthermore, appellants did not prove they were prejudiced by having the trial court conduct a debtor examination instead of the motion judge.

Appellants also claim a violation of RCW 6.32.190, which provides:

A judgment debtor who resides or does business in the state cannot be compelled to attend pursuant to an order made under the provisions of this chapter at a place without the county where his residence or place of business is situated.

Appellants were present and doing business at the time they were personally served for the trial on the merits. Therefore, appellants were present within King County for purposes of the ancillary proceedings.

■ Due process requires notice reasonably calculated to apprise a party of the pending proceedings affecting him and an opportunity to present his objections before a competent tribunal. *Watson v. Washington Preferred Life Ins. Co.*, 81 Wn.2d 403, 408, 502 P.2d 1016 (1972). These proceedings did not violate appellants' due process rights.

■ There are three types of contempt proceedings in this jurisdiction: (1) the criminal contempt prosecution under RCW 9.23.010,[3] (2) the civil contempt initiated under RCW 7.20, and (3) the inherent contempt power of a constitutional court (a) to punish conduct occurring in the court's presence, (b) to enforce orders or judgments in aid of the court's jurisdiction, and (c) to punish violations of orders or judgments. *Keller v. Keller*, 52 Wn.2d 84, 86, 323 P.2d 231 (1958). RCW 9.23.010 does not apply to the present case. The contempt orders in this case are civil contempts. The trial court failed to state whether it was acting under the civil contempt statute, RCW 7.20, or its inherent power. RCW 7.20.020 states:

> Every court of justice, and every judicial officer has power to punish contempt by fine or imprisonment, or both. But such fine shall not exceed three hundred dollars, nor the imprisonment six months; and when the contempt is not of those mentioned in RCW 7.20.010(1) and (2), it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby, before the contempt can be punished otherwise than by a fine not exceeding one hundred dollars.

In *Mead School Dist. 354 v. Mead Educ. Ass'n*, 85 Wn.2d 278, 287, 534 P.2d 561 (1975), we discussed the relationship

---

[3]"Every person who shall commit a contempt of court of any one of the following kinds shall be guilty of a misdemeanor:

". . .

"(4) Wilful disobedience to the lawful process or mandate of a court; or,

"(5) Resistance, wilfully offered, to its lawful process or mandate; . . ." RCW 9.23.010.

between general statutory contempt power and inherent contempt power:

> The court has inherent power to punish for contempt and the legislature may not destroy this power. . . . The legislature, however, may regulate that power as long as it does not diminish it so as to render it ineffectual.
>
> . . .
>
> The trial court did not find, and respondent does not argue, that the $100 limitation of RCW 7.20.020 would impair the court's contempt power in this case. In the absence of such a finding it was not necessary for the court to resort to its inherent, rather than statutory, contempt authority.

(Citations omitted.)

■■ Appellants maintain the amount of fines are excessive, because the trial court did not specifically find that the minimum fines in RCW 7.20.020 impaired the court's contempt power. We disagree.

Courts utilize the statutory contempt power and the inherent contempt power for essentially two purposes—to punish individuals or to coerce individuals into complying with court orders. In the *Mead* case, the trial court entered a punitive contempt order. The court enjoined a strike by certain school employees. The employees violated this order, and they were held in contempt. We stated:

> [T]he punishment imposed by the trial court was absolute: the contemnors were not penalized pending compliance, not sentenced conditionally under order to make plaintiff whole; they were simply sentenced. The trial court's desire was not to force adherence to its present order through duress, but to bolster respect for its future orders by attaching a deterrent sanction to violation.

*Mead School Dist. 354 v. Mead Educ. Ass'n, supra* at 286.

The *Mead* case is distinguishable from the present case. The fundamental purpose of the contempt order in this case is to coerce appellants into complying with the restitution order and the ancillary proceedings. When the primary purpose of the contempt is coercive and not punitive, the trial court need not find that the $300 maximum in RCW 7.20.020 impairs its contempt powers. The statutory maxi-

mum generally will not coerce compliance. In this case, appellants have completely disregarded the judgment and orders of the courts of this jurisdiction. If we limit the contempt fine to $300, the contempt will have no effect on appellants' future conduct.

A closer examination of the *Mead* case produces another distinction. Even though the trial court in *Mead* did not specifically state which contempt power it was acting under, we implied it was exercising its general statutory power.

> The proceedings below were, in all particulars except the severity of the sentences imposed, consistent with the requirements of RCW 7.20. In such circumstances, to allow trial courts to choose to deviate from the statutory scheme and revert to inherent power in a single aspect of a case would effectively nullify the statutes.

*Mead School Dist. 354 v. Mead Educ. Ass'n, supra* at 287-88.

In this case, the respondent and the trial court did not comply with RCW 7.20. Appellants' counsel alerted the trial court to the maximums contained in RCW 7.20.020. We presume courts act in a lawful manner. Thus, it appears the trial court was exercising its inherent power to enforce orders or judgments in aid of the court's jurisdiction. *Keller v. Keller, supra* at 89. The court's inherent power is not limited by the $300 minimum.[4]

Const. art. 1, § 14[5] prohibits the imposition of excessive fines. We consider the amount of fines reasonable in light of appellants' past activities. The trial on the merits established extensive deceptive sales practices. The trial court imposed severe penalties for these practices. *See State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 553 P.2d 423 (1976). Appellants have completely disregarded the judgment on the merits, the order

---

[4]Appellants also claim a violation of due process because the amount of fines exceeded the statutory limits of RCW 7.20.020. We find no merit in this contention. The amount of fines is within the court's inherent contempt power.

[5]"Excessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted." Const. art. 1, § 14.

concerning restitution, and the proceedings incidental thereto. We find no violation of Const. art. 1, § 14.

Finally, the contempt orders do not violate Const. art. 1, § 17, which states: "There shall be no imprisonment for debt, except in cases of absconding debtors." No person was imprisoned for the failure to pay a judgment.

The judgment of the trial court is affirmed. The continuing fines, however, will be deemed suspended during the pendency of this appeal.

STAFFORD, C.J., and ROSELLINI, HUNTER, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.

Petition for rehearing denied September 16, 1976.