[No. 23166. Department Two. July 21, 1931.]

*In the Matter of the Estate of* A. E. HARRINGTON, *Deceased.*

*In Re Proceedings for Contempt Against* HARVE H. PHIPPS.[1]

*R. L. Campbell, Powell & Herman,* and *Richard S. Munter,* for appellant.

*Chas. W. Greenough* and *A. O. Colburn,* for respondent.

[1]Reported in 1 P. (2d) 850.

MILLARD, J.—Harve H. Phipps, an attorney at law, was retained December 28, 1928, by Mary Harrington to probate the estate of that lady's deceased husband, Aura E. Harrington. The estate consisted of securities, principally bonds, of the value of approximately twenty thousand dollars. There were, in addition to the widow, three adult children entitled to share in the estate. The children assigned all of their interest in the estate to their mother. Mrs. Harrington was duly appointed administratrix of the estate by an order of the superior court of Spokane county and her bond fixed at two thousand dollars. Though she filed her oath as administratrix, bond was not given and she did not qualify as administratrix until September 14, 1929.

Mr. Phipps was in financial difficulties. He requested Mrs. Harrington to lend to him fifteen hundred dollars, suggesting at the same time that she confer with her son Elmer concerning the matter. The conference was had. On June 3, 1929, on his unsecured note payable six months after date with interest at eight per cent per annum, Mrs. Harrington made the loan of fifteen hundred dollars to Mr. Phipps. Certain of the securities of the estate were sold in order to obtain the money to lend to Mr. Phipps. No inventory of the estate had been filed, as required by the statute. Application was not made to the court for approval of such disposition of the assets of the estate.

The note matured in December, 1929. Mr. Phipps could not pay it. Dissatisfied with Mr. Phipps, Mrs. Harrington caused her present attorney to be substituted in his place. On February 26, 1930, the administratrix, through her attorney, obtained five hundred and sixty dollars from Mr. Phipps to be applied to payment of the note. On August 11, 1930, the administratrix, in cause entitled, ''In the Matter of the Estate

of Aura E. Harrington, deceased," filed a petition reciting the foregoing facts, and prayed that Mr. Phipps be required to return the borrowed money he was wrongfully withholding and which he refused to repay.

Hearing was had on the order on Mr. Phipps to show cause why he should not be compelled to restore to the estate the money he received from the administratrix. Mr. Phipps urged as an excuse his then present inability to return the borrowed money. By formal order the court directed Mr. Phipps to restore the money to the estate on or before November 1, 1930. With that order Mr. Phipps did not comply, nor did he file in the cause any excuse for his non-compliance with the court's order.

On November 29, 1930, on application of the attorney for the administratrix, Mr. Phipps was ordered to show cause on December 9, 1930, why he should not be punished for contempt for his neglect and refusal to comply with the order to restore to the estate the money he had borrowed therefrom. As a result of the hearing had December 18, 1930, the cause being entitled, "In the Matter of the Estate of A. E. Harrington, deceased. In Re Proceedings for Contempt against Harve H. Phipps, Respondent," Mr. Phipps was adjudged guilty of contempt and, as a punishment therefor, he was fined one hundred dollars and committed to the county jail to there remain until the fine was paid. The court's findings and order read as follows:

"The said Harve H. Phipps appeared personally and filed certain affidavits and testified orally, again urging his present inability to comply with the order of the court requiring him to return said moneys to said estate, admitting the facts as recited and his neglect and omissions in connection with the proper administration of said estate, and urging his good inten-

tions to ultimately, if humanly possible, repay and return said moneys to said estate.

"And the court being now fully advised, finds that the said Harve H. Phipps in obtaining a loan from the administratrix of the funds of said estate by his own solicitation and upon his advice, before the administratrix was qualified to act as such, and without disclosing to said administratrix his financial standing or his liabilities already incurred, and without applying for or obtaining from the court an order authorizing such loan, did act unethically, unprofessionally and in violation of his duties and obligations as an attorney in his relations to his client and to the court, and perpetrated a fraud upon his client; and

"That such acts and conduct constitutes a willful and gross neglect of his duty as an attorney in his proper relation with his client and toward the court; and

"An unlawful interference with the proceedings in the court looking to the proper administration of said estate; and

"That his acts and conduct in the premises, and his neglect and refusal to comply with or obey the order of the court requiring him to return and repay to said estate the moneys so obtained by him constitutes a contempt of this court, of which the said Harve H. Phipps is adjudged to be guilty.

"And the court being unable to find that the said Harve H. Phipps has at this time property or money from which he can now repay the said moneys to said estate, the court orders as punishment for the contempt of which the said Harve H. Phipps is hereby adjudged to be guilty, that he pay a fine of One Hundred Dollars, and the costs of this proceeding, and that he be imprisoned in the Spokane county jail until such fine and costs are paid, or until otherwise discharged according to law."

Mr. Phipps has appealed.

This is a contempt proceeding. It was instituted to punish the appellant for disobedience of the court's order. It is criminal and punitive in its nature.

For violation of the order to restore to the estate the money he had borrowed therefrom, the court found the appellant guilty of contempt, fined him one hundred dollars and costs, and committed him to prison to there remain until such fine and costs were paid.

"Criminal contempts, being offenses directed against the dignity and authority of the court, are offenses against organized society, which, although they may arise in the course of private litigation, are not a part thereof, but raise an issue between the public and the accused and are, therefore, criminal and punitive in their nature." 13 C. J., § 7, p. 7.

The proceeding being criminal in its nature—the object of the proceeding was punishment—the state is the real prosecutor, and under our statute the proceeding should have been brought in the name of the state.

"In the proceeding for a contempt, the state is the plaintiff. In all cases of public interest, the proceeding may be prosecuted by the prosecuting attorney on behalf of the state, and in all cases where the proceeding is commenced upon the relation of a private party, such party shall be deemed a coplaintiff with the state." Rem. Comp. Stat., § 1054.

In *Trullinger v. Howe*, 58 Ore. 73, 113 Pac. 4, it was held under a contempt statute, which is word for word the same as our statute (§ 1054, *supra*), that the proceeding must be instituted in the name of the state. The court said:

"The apparent reason for this statutory requirement is that, when a decree has been rendered by a court of this State, the State is interested in the enforcement of its provisions, and in seeing that no person is prosecuted for contempt in disobeying such decree, except in a proper case. Contempt proceedings, if civil, as in the case at bar, should be instituted in the name of the State upon the relation of a private party. This defect could have been cured by amendment at any time before trial: *State ex rel. Downing,*

40 Ore. 314 (58 Pac. 863; 66 Pac. 917). No attempt to amend, however, was made in this case."

While the court could have proceeded coercively, and made the appellant's disobedience a civil contempt, that was not done. Imprisonment of one for refusal to obey a lawful order of the court to pay over money which he has collected in the course of his professional duty is not imprisonment for debt.

"Imprisonment under an attachment for contempt, to compel obedience by an officer of court to a lawful order to pay over money which he has collected in the course of his official or professional duty, is not imprisonment for debt. It is sound disciplinary dealing with an unruly member of the forensic household. One who lives and moves within the precincts of the court misbehaves, to the injury of a person who has trusted him, and whose confidence he has abused, and the court orders him to make redress. He refuses, and the court, as the minister of law, chastens him by imprisonment, and endeavors to coerce obedience. It is true, he is a debtor; but he is more than a debtor—he is an assistant in the affairs of justice, and as such, bears a peculiar and special relation to the law. Through that relation the court acts upon him, treating him, not as a mere debtor who will not pay, but as a domestic of the law who refuses to obey his master." *Smith v. McLendon,* 59 Ga. 523.

This is a criminal contempt proceeding, hence should have been brought, as the statute directs, in the name of the state.

The judgment is reversed.

TOLMAN, C. J., BEELER, MAIN, and BEALS, JJ., concur.