[No. 28756. Department One. October 30, 1942.]

BLANCHE E. DAVIS, *Respondent*, v. THOMAS H. DAVIS, *Appellant*.[1]

[1]Reported in 130 P. (2d) 355.

*James G. Mulroy,* for appellant.

*Ralph A. Horr* and *Tworoger, Rombauer & Franco,* for respondent.

JEFFERS, J.—This is an appeal by Thomas H. Davis from an order made and entered by the superior court for King county, on January 29, 1942, decreeing that Mr. Davis be confined in the King county jail until an order dated September 25, 1941, be complied with by payment into the registry of the court of the sum of one hundred seventy-five dollars. The order appealed from was entered after the court had made and entered findings of fact to the effect that Davis was guilty of contempt of court, in that he had wilfully refused to make the payment of one hundred seventy-five dollars, although able to do so.

In order that a true picture of the various legal steps heretofore employed by the parties may be presented, reference is made to the case of *Davis v. Davis,* 12 Wn. (2d) 499, 122 P. (2d) 497, decided February 19, 1942. To obtain a further picture of the facts leading up to the present proceeding, it appears that, after the order had been made by Judge Meakim, and upon the refusal of Mr. Davis to make the payment therein required of him, Mrs. Davis obtained a show cause order, returnable before Honorable William G. Long. Upon the hearing on this show cause order, on Sep-

tember 25, 1941, Mr. Davis was directed to pay to Mrs. Davis, on or before October 20, 1941, the sum of one hundred seventy-five dollars, attorney's fees, to enable Mrs. Davis to resist defendant's appeal to this court. After the entry of the last mentioned order by Judge Long, Mr. Davis applied to this court for a writ of prohibition. The writ was denied by this court on January 13, 1942.

On January 23, 1942, Mrs. Davis filed a motion for an order to show cause why Mr. Davis should not be punished for contempt of court. This motion is supported by the affidavit of Ralph A. Horr, one of Mrs. Davis's attorneys. On the filing of this motion and affidavit, a show cause order was issued, requiring Mr. Davis to appear January 29, 1942, to show cause why he should not be punished for contempt, for failure to comply with the order of court requiring him to make payment of one hundred seventy-five dollars attorney's fees and suit money to Mrs. Davis, on or before October 20, 1941.

Thereafter, on January 29, 1942, the matter came on for hearing before Judge Long, on the show cause order last above referred to. Judge Long made and entered findings of fact, conclusions of law, and a decree. The court found that an order had been made requiring Mr. Davis to make the payment of attorney's fees and suit money; that Mr. Davis had wilfully refused to make such payment, although able to do so. The court ordered Mr. Davis confined in the King county jail until he had complied with the order requiring him to pay the sum of one hundred seventy-five dollars into the registry of the court. It is from this order entered January 29, 1942, that this appeal is taken.

Appellant assigns error in overruling his demurrer to the motion and affidavit to show cause, on the ground that the affidavit upon which the show cause

order was issued did not meet the requirements of Rem. Rev. Stat., § 1052 [P. C. § 7445], and was insufficient to give the court jurisdiction to punish for contempt; in not holding that the contempt proceeding should have been brought in the name of the state; in holding that the court had jurisdiction, by contempt proceedings, to compel payment of a judgment for attorney's fees and suit money.

Appellant in his brief refers to an affidavit made by Albert M. Franco. As we read the record before us, the affidavit filed in support of the motion for an order to show cause was signed by Ralph A. Horr.

Rem. Rev. Stat., § 1052, provides:

"In cases other than those mentioned in the preceding section, before any proceedings can be taken therein, the facts constituting the contempt must be shown by an affidavit presented to the court or judicial officer, and thereupon such court or officer may either make an order upon the person charged to show cause why he should not be arrested to answer, or issue a warrant of arrest to bring such person to answer in the first instance."

Appellant seems to argue that the affidavit is defective, in that it does not show that the show cause order herein was served upon appellant and a demand made that he comply therewith. Appellant cites *State ex rel. Ewing v. Morris*, 120 Wash. 146, 207 Pac. 18, and *State ex rel. Dunn v. Plese*, 134 Wash. 443, 235 Pac. 961.

It is true that in the *Ewing* case, *supra*, a statement was made in accordance with the contention of appellant. However, in the cited case, we also stated that, where the one upon whom the show cause order is to be served was present at the hearing thereon, and was represented by his attorney, notice or knowledge must necessarily be imputed to him.

In the instant case, it appears from a minute entry

of the court, made on January 29, 1942, that Thomas H. Davis was sworn and examined, and it also appears from the recitation found in the findings of fact, upon which the judgment of contempt is based, that appellant was represented at the hearing by his counsel, Mr. James G. Mulroy.

We are of the opinion that the affidavit and show cause order in the instant case substantially complied with the statute. The show cause order advised appellant that he was charged with failure to comply with a specific order of the court previously made. Also, the affidavit filed set forth that appellant had failed to comply with a specific order of the court previously made, although able to do so.

We are also of the opinion that it sufficiently appears that appellant had notice of the contents of the show cause order, he having been personally present in court and represented by his attorney at the hearing on such show cause order.

Appellant's first assignment of error cannot be sustained.

Appellant next contends that the record discloses that the purpose of this proceeding is to punish appellant for an alleged consummated contempt of court, and that such a proceeding must be brought in the name of the state, citing *In re Harrington's Estate,* 163 Wash. 516, 1 P. (2d) 850. It is true that in the cited case we held that the contempt proceedings involved therein should have been brought in the name of the state. The reason for our decision is evident from the following statement found therein:

"The proceeding being criminal in its nature—the object of the proceeding was punishment—the state is the real prosecutor, and under our statute [Rem. Rev. Stat., § 1054] the proceedings should have been brought in the name of the state."

In the cited case, the judgment was that Mr. Phipps pay a *fine* of one hundred dollars and costs, and that he be confined in jail until such fine and costs were paid. It is evident that the contempt proceeding was not in aid of the equity power of the court to enforce its decree.

Beginning with the case of *Poland v. Poland,* 63 Wash. 597, 116 Pac. 2, we have expressly recognized a practice which permitted a proceeding to enforce the payment of alimony decrees to be entitled in the original action. In the case cited, we stated:

"It has long been the established practice in this state, in seeking the enforcement of alimony decrees, to entitle the proceeding in the original action, and such practice has been recognized in this court in *Holcomb v. Holcomb,* 53 Wash. 611, 102 Pac. 653, and *Metler v. Metler,* 32 Wash. 494, 73 Pac. 535. Had the respondent failed to appear and the court desired to move against him for his refusal, it would have been the commencement of a new proceeding, and, as such, brought under the contempt statute. But so long as the only question before the court involves the construction and enforcement of its original decree, it was an equitable proceeding, properly brought under the original proceeding and properly entitled therein."

We further stated:

"This is a proceeding in a court of equity in aid of its original jurisdiction, in which the court is seeking the enforcement of its original decree; and although the court required the respondent to appear in response to its order or be adjudged in contempt, the nature of the proceeding was not changed from one of equitable to one of criminal cognizance."

In *McGill v. McGill,* 67 Wash. 303, 121 Pac. 469, we stated:

"This is an appeal from an order requiring the defendant to pay delinquent installments of alimony, awarded to plaintiff for the support of a minor child,

by a decree of divorce, within ten days, failing which he stand committed to the county jail as for contempt.

"It is urged that the proceeding, being for a contempt, could, under Rem. & Bal. Code, § 1054, be prosecuted only in the name of the state. It is a sufficient answer to say that this is not a proceeding for an independent contempt such as contemplated by the statute. The statutory proceeding is, in its nature, an original criminal proceeding, in which the sole subject of inquiry is the contemptuous conduct charged. The proceeding here arose in the exercise of the inherent power of a court of equity to enforce its decrees. The proceeding was, therefore, properly entitled as in the original action to which it is referable for the court's jurisdiction. This is no longer an open question."

The quotation last above set out was cited with approval in *Miller v. Miller,* 103 Wash. 569, 175 Pac. 295.

*Feek v. Feek,* 187 Wash. 573, 60 P. (2d) 686, is an appeal from an order providing that, if appellant failed to make certain monthly payments of support money, a citation should issue directing appellant to show cause why he should not be punished for contempt of court. This proceeding was instituted by petition, motion, and affidavit, pursuant to which an order was issued, directing appellant to show cause why he should not forthwith pay up the delinquent installments, or else be punished for contempt. In the course of the opinion, we stated:

"The proceeding, however, was not one, primarily to have appellant punished for contempt, but was one to enforce payment of the sums due and accruing under the decree, in order to assure the minor son's education.

"The proceeding before us is not one wherein the only matter to be inquired into is the contemptuous act charged. It is a proceeding in a court of equity in aid of its original jurisdiction, wherein the court is

seeking to enforce its original decree. *In enforcing its orders and decrees, a court of equity has the right to resort to contempt proceedings as a coercive measure, and when it does so, the nature of the proceeding is not thereby changed from one of equitable cognizance to one of criminal cognizance.*

"If there is a definite and unconditional order of the court to pay alimony or support money, it is enforceable by contempt proceedings. *State ex rel. Ridenour v. Superior Court,* 174 Wash. 152, 24 P. (2d) 418." (Italics ours.)

Being of the opinion that this proceeding was brought as a coercive measure, in aid of a court of equity in seeking to enforce its original decree, the proceeding is of equitable cognizance, and was therefore properly entitled in the original action.

■ Appellant finally contends that the allowance of attorney's fees and suit money is not an allowance of alimony as such, and collection thereof cannot be enforced by contempt proceedings. As we understand the theory of appellant's contention, it is that only in case of an order to pay alimony as such can the court, by contempt proceedings, enforce compliance with its decree, and that the order in the instant case, directing appellant to pay one hundred seventy-five dollars as attorney's fees and suit money, would fall within the same category as a property award made to the wife, which award we have held cannot be enforced by contempt proceedings. In support of his contention, appellant cites *State ex rel. Ridenour v. Superior Court,* 174 Wash. 152, 24 P. (2d) 418; *State ex rel. Lang v. Superior Court,* 176 Wash. 472, 30 P. (2d) 237; *State ex rel. Foster v. Superior Court,* 193 Wash. 99, 74 P. (2d) 479.

We are unable to agree that there is such a difference between an order which directs and commands the husband to pay attorney's fees and suit money for

the purpose of supplying the wife with funds to prosecute an appeal and an order to pay alimony, that a court of equity should be permitted to call to its aid contempt proceedings to enforce one decree and not the other.

We are of the opinion that the reason for allowing the court to bring to its aid contempt proceedings to enforce its decree directing the payment of alimony is equally applicable to a decree directing the payment of attorney's fees and suit money.

In *State ex rel. Foster v. Superior Court, supra,* we said:

"The only question presented is whether the decree makes a provision for alimony or simply makes a property award to the wife."

In the cited case, the interlocutory decree which was sought to be enforced by contempt proceedings, stated in part as follows:

"IT IS ORDERED, ADJUDGED AND DECREED That there be and is hereby awarded to the plaintiff as her sole and separate property . . . [then follows a description of the property]."

While the following statement is found in the opinion: "Following the decree, it provided for the payment of five hundred dollars as attorney's fees and the sum of $63.35 costs," the matter of the attorney's fees and costs was not referred to in the opinion, and we held that the interlocutory decree provided only for an award of property, and hence the court did not have jurisdiction to compel the performance of the decree by contempt proceedings. We are satisfied that in the cited case it was not the intention of this court to hold that a direct order to pay attorney's fees was only an award of property.

*State ex rel. Ridenour v. Superior Court, supra,* cited by appellant, is also a case in which it was sought,

by contempt proceedings, to enforce the provisions of an interlocutory decree. The decree confirmed and made a part thereof an agreement of the parties relative to a property settlement. In the cited case, we referred to the case of *Schnerr v. Schnerr*, 17 P. (2d) (Cal. App.) 749, wherein the court held that approval and confirmation of a property settlement agreement in the decree was an insufficient basis for contempt proceedings. We then stated:

"Although there are apparently few cases bearing directly on the point, we think the statement of the law in the *Schnerr* case is supported by the weight of authority and reason."

The following statement found in the *Ridenour* case we think states the reason given by most courts for permitting a court of equity to resort to contempt proceedings to enforce its decrees; and, in our opinion, this reason applies equally as well to an order directing the payment of attorney's fees and suit money, as in the instant case, as to an order directing the payment of alimony. We quote:

"A decree for alimony differs from an ordinary judgment for money. The latter merely determines an amount owing, while the former directly commands the defendant to pay. . . . To be enforceable by contempt proceedings, there must be a definite and unconditional order to pay alimony as such."

*State ex rel. Lang v. Superior Court, supra,* cited by appellant, also involved a property settlement entered into between the parties and made a part of the decree of divorce.

We do not feel that any of the cited cases support appellant's contention herein.

Inasmuch as appellant contends that only in the case of an order to pay alimony can a court of equity enforce its order by contempt proceedings, let us look

to the definition of this word. In Webster's New International Dictionary, we find the following definition of alimony:

"An allowance made to a woman for her support out of the estate or income of her husband, or of him who was her husband, upon her legal separation or divorce from him, or during a suit for the same. Alimony granted pending a suit, called *alimony pendente lite,* is made to include a reasonable allowance for prosecution of the suit as well as for support. Alimony is not a debt which the wife can assign or anticipate, or which can be levied upon or reached in execution for a debt prior to the divorce. Nor is it a debt which can be proved in bankruptcy by the husband."

In 1 R. C. L. 865, subdivision 3, which deals with the subject of alimony, we find this statement:

"Temporary allowances are also made for the payment of the wife's counsel fees and other expenses of the litigation. Such allowances are of the same nature and are governed by the same general principles as the allowance for maintenance."

The reason for the rule that an order to pay alimony may be enforced by contempt proceedings is stated thus in 30 A. L. R. 133, subdivision (b):

"The courts have assigned various reasons for their holding that alimony is not a debt within constitutional provisions prohibiting imprisonment for debt, as, that an allowance for alimony is merely a means of enforcing a duty which the husband owes to the public as well as to the wife; that, in case the husband has property, the order is in effect a decree of distribution of property, requiring payment to the wife of her share of the estate; that the constitutional prohibition applies only to debts founded upon contracts, express or implied, or liabilities for torts; and that the imprisonment is in reality for contempt of court for failure of one able to do so to obey the order of the court, and not merely for failure to pay money."

We have found in this state one case which seems

to specifically recognize the right to enforce, by contempt proceedings, a decree for the payment of attorney's fees and costs, as well as alimony so-called. In *In re Cave*, 26 Wash. 213, 66 Pac. 425, 90 Am. St. 736, it was decreed "that the plaintiff, Martha M. Cave, have judgment against the defendant, George B. Cave, for twenty ($20) dollars per month alimony from and after February 1, 1900," and "that plaintiff recover of defendant fifty ($50) dollars attorney's fees and costs and disbursements of this action to be taxed." The defendant neglected and refused to pay any part of the money required to be paid by the decree. Upon the petition of plaintiff, the court issued an order directed to defendant, requiring him to appear and show cause why he should not pay plaintiff or her attorneys $380 accrued alimony, fifty dollars attorney's fees, and seventeen dollars costs. The defendant appeared, and thereafter the court entered an order directing that defendant forthwith pay to plaintiff or her attorneys, under the judgment and decree entered in the cause, alimony, court costs, and attorney's fees, amounting in the aggregate to the sum of $447, and upon his failure so to do, that he be committed to the county jail of King county. Defendant refused to comply with the order, whereupon the court ordered that defendant be committed to the King county jail until the full sum of alimony, court costs, and attorney's fees be paid.

In the cited case, we stated that the court found that, at the time the order was made, the defendant had money in his possession and under his control with which to pay the sum demanded, that he refused to comply with the order, and that the commitment was thereupon issued. These facts gave the court authority to punish by immediate imprisonment, until

the order was complied with. The matter came before this court on a writ of *habeas corpus.*

The authorities generally seem to recognize that an order directing the husband to pay attorney's fees may be enforced by contempt proceedings.

"The usual method of enforcing an order in a divorce action allowing the wife costs and counsel fees is by means of a commitment for contempt of court, which method can be resorted to only after notice to the husband and a demand for payment, except where the contempt was committed in the actual presence of the court, in which case it may be summarily punished." 17 Am. Jur. 460, § 583.

In 27 C. J. S. 1036, § 259, we find this statement:

"Since failure to pay alimony is fundamentally contempt of the court's decree, it is generally held that a judgment, order, or decree for alimony or attorney's fees may be enforced by contempt proceedings."

In *Jensen v. Jensen,* 119 Neb. 469, 229 N. W. 770, the court stated:

"This court has determined, upon the husband's refusal, without just cause, to pay or satisfy an order or judgment for alimony, suit money, and attorney's fees for the benefit of the wife in a divorce action, that the order or judgment may be enforced by contempt proceedings, and that such proceedings do not violate the constitutional provision heretofore quoted."

The constitutional provision referred to provided: "No person shall be imprisoned for debt in any civil action or mesne or final process, unless in cases of fraud."

If the definition of the word "alimony" is not broad enough to include attorney's fees and suit money, we still have the authority above referred to, which recognized no distinction between attorney's fees and suit money and alimony, in so far as contempt proceedings are concerned.

Under the facts as found by the trial court in this proceeding, and under the authorities cited, we are of the opinion that the court had jurisdiction to commit appellant to jail until the order requiring him to pay the one hundred seventy-five dollars attorney's fees and suit money had been complied with.

The judgment of the trial court is affirmed.

ROBINSON, C. J., MILLARD, STEINERT, and DRIVER, JJ., concur.

