[No. 28293.   *En Banc.*   July 8, 1943.]

LEO DELORME, *Respondent,* v. INTERNATIONAL BAR-
TENDERS' UNION, LOCAL 624, *et al., Defendants,*
DARROW RORVIK *et al., Appellants.*[1]

[1]Reported in 139 P. (2d) 619.

*J. P. Tonkoff,* for appellants.

*Henry Clay Agnew* and *George C. Twohy,* for respondent.

BEALS, J.—This action was instituted by plaintiff, Leo Delorme, against International Bartenders' Union, Local 624, Dick Howard, and Henry Traub, plaintiff alleging that under a license from the state of Washington he was operating a tavern in which he sold beer and wine at retail, his patrons being generally residents of the city of Yakima; that the defendants in the action had picketed his place of business, giving notice of their contention that plaintiff, in the conduct of his business, was unfair to organized labor and to the defendant union. Plaintiff further alleged that there was no dispute whatever between plaintiff and his employees, and that the picket line established by defendants was maintained solely for the purpose of controlling plaintiff's actions in choosing the brand of beer which he would sell at his tavern. Plaintiff asked for judgment for damages, and for an order

restraining defendants from picketing his place of business. The action was tried to the court, and resulted in findings of fact and conclusions of law in plaintiff's favor, followed by the entry of a decree, March 13, 1939, as follows:

"It is ORDERED, ADJUDGED AND DECREED that the above named defendants, International Bartenders' Union Local 624, together with all their members, officers and agents, and Dick Howard and Henry Traub, be and they are hereby restrained and enjoined from picketing, boycotting, or in any manner interfering with the plaintiff's place of business, or with the carrying on of plaintiff's business."

Thereafter, April 13, 1940, plaintiff obtained an order, directed to Darrow Rorvik and four others, requiring them to appear before the court at a time fixed, to show cause

" . . . why they should not be compelled by coercive process of this court to abide by the terms of the decree herein and particularly that portion thereof providing as follows:

"That defendants 'be and they are hereby restrained and enjoined from picketing, boycotting, or in any manner interfering with plaintiff's place of business, or with the carrying on of plaintiff's business.'

"And to further show cause, if any they have, why they should not be required in open court to signify their willingness to abide by said decree and cease interfering with plaintiff's place of business or in event of their refusal to be summarily imprisoned until such time as said respondents comply."

Rorvik and the others appeared, and the matter was heard on affidavits and oral testimony, all of which was introduced by plaintiff. At the conclusion of the hearing, the court entered findings of fact, from which it appears that Rorvik and the other persons named in the order to show cause were members of the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers, Yakima, Washington, Local No. 524 (hereinafter referred to as teamsters

union, international or local), and were employed by wholesale distributors of merchandise in the city of Yakima as drivers of delivery trucks, and as such drivers had refused to deliver merchandise to the plaintiff, although their respective employers had accepted from plaintiff orders for the merchandise; that, when asked, the named drivers had no explanation of their refusal to deliver the merchandise to plaintiff, and each driver persisted in his refusal after knowledge of the terms of the final decree which had been entered in this action, as above set forth.

The court further found that the teamsters union had participated actively in the defense upon the trial of the action; that the only defense to the action interposed on behalf of the defendants named in the complaint was that the defendants had interfered with plaintiff's business (by picketing the same), because of the quarrel which the teamsters union (international) had with the International Union of United Brewery, etc. Workers (hereinafter referred to as the brewery workers union); that the stipulation of facts, which was considered by the court as part of the trial of the original action, was prepared under the supervision of the business agent of the teamsters union (local), who testified on the trial as a witness for the defendants; and that the judgment for costs rendered against the defendants in the action was paid by a check drawn by the teamsters union.

The court concluded that the acts of Rorvik and the other teamsters constituted acts of interference with the business of plaintiff, Leo Delorme, and were done with the intent of violating both the letter and spirit of the decree which had been entered in the action; and that the decree was

"  . . .  binding upon said Teamsters' Union and its members insofar as it adjudicated the dispute advanced by said union in said cause, and that also the acts of the defendants were done for the purpose of

aiding and abetting the original defendants in carrying out the acts prohibited by said decree."

The court then entered a judgment and order in contempt proceedings, as follows:

"It is Found, Ordered and Adjudged: That respondents, Darrow Rorvik, Jim Meikle, Archie Driscoll, Ed Griffin and Jack Buell are guilty of contempt of this court.

"It is further Found and Adjudged that in the absence of a new and bona fide labor dispute between plaintiff and respondents that respondents be and they are hereby directed in the future while employed as drivers delivering products and commodities from making any discrimination against plaintiff, Leo Delorme, until further order of the court or until such time as this order may be modified.

"It is further ordered that respondents be and they are hereby directed to forthwith purge themselves of said contempt by refraining in the future from refusing to make deliveries of products and commodities to Leo Delorme on the same terms and conditions as to any other person and when directed by their employer to do so until such time as this order is modified or reversed."

From this order, Rorvik and the other four teamsters (who will hereinafter be referred to as appellants) have appealed, assigning error upon the denial by the trial court of their motion to quash the order to show cause; upon the court's denial of their motion for dismissal at the close of the evidence; and upon the entry of the order, above quoted, finding appellants guilty of contempt of court, and directing appellants' future conduct as set forth in the order.

The controversy which resulted in the filing of the original complaint in this action was based upon the well-known, long-continued "jurisdictional dispute" between the teamsters union and the brewery workers union, both affiliates of the American Federation of Labor, as to which union should have jurisdiction of the truck drivers employed in the brewing industry.

The brewery workers union having furnished these drivers, the teamsters union, desiring to obtain jurisdiction of that branch of the brewing industry, at the 1933 convention of the A. F. of L., asked that jurisdiction over the brewery drivers be vested with the teamsters union. The executive committee of the A. F. of L. recommended that the request be granted, and the convention adopted this recommendation by a majority vote. The brewery workers refused to abide by this ruling, claiming that it was beyond the authority of the A. F. of L. and contrary to its constitution. The brewery workers accordingly instituted an action in the courts of the District of Columbia, asking for a decree expunging the proceedings of the 1933 convention, which suit is still pending.

It seems that in most of the states, Oregon and Washington being exceptions, the brewery workers union still maintains jurisdiction over the drivers employed directly in the brewing industry.

The situation relating to this controversy is fully stated in the case of *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 63 P. (2d) 397, and these conditions still existed at the date of the entry of the original decree in this action.

In the case at bar, there never has been any question concerning wages, hours of labor, working conditions, or the sale of any nonunion made product, the controversy resulting from the following situation:

United Union Brewing Company, a Washington corporation, is engaged in the manufacture of beer. A majority of the shares of its capital stock is owned or controlled by the brewery workers union, and, in connection with its brewing business, the brewery company employs drivers, all of whom are members of the brewery workers union. The brewery company is engaged to some extent in interstate commerce. Its employees are union members, and have

no complaints as to hours, wages, or working conditions, they having unanimously selected the brewery workers union as their bargaining agency. Its product, known as "Old Empire Beer," has been declared unfair by the bartenders union local 624, the teamsters union local 524, and by the Yakima central labor council. This declaration was in line with the policy of the officers of the teamsters union in this state, and was based solely upon the ground that the drivers employed by the brewing company were members of the brewery workers union, instead of belonging to the teamsters union.

Respondent, Leo Delorme, commenced the purchase of Old Empire beer on or about December 1, 1938, whereupon the original defendants in the action, International Bartenders Union, Local 624, and the individual defendants, picketed respondent's tavern as unfair, simply because respondent purchased and sold the beer manufactured by United Union Brewing Company. Respondent is simply caught between the upper and nether millstones composed of the rival unions, which are waging an internecine warfare within the A. F. of L., the prize of victory to be the control of the truck drivers who deliver brewery products. *United Union Brewing Co. v. Beck*, 200 Wash. 474, 93 P. (2d) 772.

The trial court's finding that the teamsters union had participated actively on behalf of the defendants on the trial of this action, and the other findings of the court above referred to, are amply supported by the record. Since the entry of the original decree, respondent has experienced much difficulty in obtaining supplies of merchandise necessary for the conduct of his business. The wholesalers in the city of Yakima have agreed with the teamsters union that they will employ as truck drivers only persons who are members of that union, and that they will deliver no merchandise for transportation save to drivers who

are members of that union. Relying upon these contracts, members of the teamsters union have refused to deliver merchandise to respondent, who has for this reason been greatly handicapped in the conduct of his business.

Respondent, believing that these appellants had, as truck drivers, unlawfully refused to deliver at his place of business merchandise which he had purchased and paid for, and which the dealers from whom he had purchased the merchandise had requested appellants to deliver to respondent, filed in this cause affidavits stating these facts, and asking for an order directed to appellants, requiring them to appear before the court at a date fixed in the order and show cause why they should not be compelled by coercive process to abide by the terms of the original decree entered in this cause, under penalty of punishment as for contempt of court. An order having been issued and served upon appellants, they, with their counsel, appeared before the court in compliance therewith.

Appellants appeared at the hearing, but filed no answer. Their counsel moved to quash the order to show cause, on the ground that his clients were not parties to the injunction suit. The court reserved its ruling on the motion, which was later denied. Respondent then introduced testimony in support of his application, and called each one of the appellants to the witness stand as a witness on his behalf. Each of the appellants testified that he was a member of the teamsters union, was employed by a wholesaler in Yakima, and that he had refused to deliver merchandise which had been ordered by respondent from his employer, although his employer had requested him to make such delivery. When asked to state the reason for his refusal to deliver the merchandise to respondent at his place of business, each appellant refused to testify, on the ground that his answer might incriminate him.

Respondent introduced testimony to the effect that, shortly after the entry of the decree, the teamsters union picketed respondent's tavern, but the evidence fails to disclose how long such picketing continued. Testimony was also introduced showing that respondent was at times denied, at business houses at Yakima, delivery of merchandise needed in the conduct of his business, notwithstanding the fact that his own truck was ready to carry the product.

It also appears from the evidence that local 624 of the bartenders union of Yakima and the local of the teamsters union are members of the Yakima central labor council, and that Old Empire beer had been declared unfair by that council, as well as by the bartenders and the teamsters locals.

From the testimony it clearly appears that all of the activities of the two local unions complained of by respondent were carried on pursuant to a common plan to injure respondent in his business, because he sold Old Empire beer, which was objectionable to the local unions referred to, for the reason that it was a product manufactured by a brewery whose truck drivers were members of the brewery workers union.

That the acts of the union injured respondent in the conduct of his business, and resulted in great annoyance and financial loss, is beyond question.

No bona fide labor dispute exists between the teamsters union or any of its members and the respondent in this action.

■ Appellants argue that, as they were not parties to the action as originally instituted, but had merely been brought in by an order to show cause after the entry of the decree, it should be held that this proceeding is punitive, or criminal, in its nature, and should have been instituted in the name of the state of Washington, pursuant to Rem. Rev. Stat., § 1054 [P. C. § 7447]. In support of this argument, appel-

lants cite *In re Harrington's Estate,* 163 Wash. 516, 1 P. (2d) 850. In the case cited, it appeared that the proceeding was designed to punish an attorney for his failure to comply with an order of the court in a probate proceeding, directing him to restore to the estate money which the court held he had illegally obtained from the administratrix. The court directed that the contumacious attorney pay a fine of one hundred dollars and costs, and be imprisoned until he paid the same. This court held that it appeared that the proceeding was purely punitive in its nature, and should have been instituted in the name of the state.

Appellants also cite other cases, including *State ex rel. Dailey v. Dailey,* 164 Wash. 140, 2 P. (2d) 79, in which we held that the proceeding was in its nature both civil and criminal, and that a judgment which was not coercive, but purely punitive, was properly entered.

In the case at bar, respondent sought relief against appellants by way of a coercive, and not a punitive, order. The court properly held that it was not necessary that the proceeding be instituted in the name of the state, and that relief might be granted respondent by way of enforcement of the original decree against appellants. *Wright v. Suydam,* 79 Wash. 550, 140 Pac. 578; *State ex rel. Tefft v. Superior Court,* 143 Wash. 677, 255 Pac. 1026; *State ex rel. Dailey v. Dailey, supra; Feek v. Feek,* 187 Wash. 573, 60 P. (2d) 686.

■ Appellants argue that, because neither they, individually, nor the union to which they belonged were parties to the original suit, appellants may not be brought into the case subsequent to the entry of the decree by an order to show cause, and, after hearing thereon, be required to observe the provisions of the decree.

Beyond question, the local teamsters union so concerned itself with the trial of the action that its officers and members became bound by the terms of

the decree. The record shows that appellants knew of the decree, and were fully advised concerning the same. By their acts, appellants have demonstrated that they are motivated by a unity of purpose with the officers of their own union and by the bartenders local union, one of the defendants in the action. The activities in which appellants have engaged are so tied in with the acts of the original defendants in the action as to demonstrate that they have been carried on in connection with a plan to interfere with the conduct of respondent's business, to his detriment. From these facts, it must be held that appellants have been guilty of acts in violation of the decree by which they are bound, and that the trial court properly held that they had intentionally and knowingly violated the decree, and stood in contempt of court. *State v. Nicoll,* 40 Wash. 517, 82 Pac. 895; *State ex rel. Lindsley v. Grady,* 114 Wash. 692, 195 Pac. 1049, 15 A. L. R. 383; *Ex parte Lennon,* 166 U. S. 548, 41 L. Ed. 1110, 17 S. Ct. 658.

■ Appellants next argue that the order from which they have appealed is void, at least in so far as it contains mandatory provisions. They argue that it commands their future conduct in a manner which the court will not be able to supervise, and also that it violates the thirteenth amendment to the Federal constitution, forbidding involuntary servitude.

A court of equity is not without authority to require a person subject to its jurisdiction to perform such affirmative acts as, for the time being, it is his duty to perform, and in proper cases a mandatory injunction may be issued without violating the thirteenth amendment. *Ex parte Lennon, supra.*

■ As we have stated, there is no bona fide labor dispute to which respondent is in any way a party. Respondent is engaged in a lawful business which he is conducting in a lawful way. While any individual has a right to deal or not to deal with any particular

person or firm, a concerted agreement between a number of persons to harass another in the conduct of his business, whether for the sole purpose of injuring him or with intent indirectly to injure another, may amount to an illegal conspiracy in violation of law. *Grenada Lbr. Co. v. Mississippi,* 217 U. S. 433, 54 L. Ed. 826, 30 S. Ct. 535; *Eastern States Retail Lbr. Ass'n v. United States,* 234 U. S. 600, 58 L. Ed. 1490, 34 S. Ct. 951, L. R. A. 1915A, 788; *Martell v. White,* 185 Mass. 255, 69 N. E. 1085, 102 Am. St. 341, 64 L. R. A. 260; *Ertz v. Produce Exchange Co.,* 79 Minn. 140, 81 N. W. 737, 79 Am. St. 433, 48 L. R. A. 90.

The fact that respondent buys and sells a brand of beer brewed by a manufacturer with whom the teamsters union is waging a so-called jurisdictional dispute, affords no sufficient excuse for the acts of the teamsters union and its members, either in boycotting respondent or in interfering with respondent's conduct of his business, to his loss.

Appellants were called as witnesses by respondent. Each admitted his refusal to deliver merchandise ordered, and in some cases paid for by respondent, to him at his place of business, although their respective employers had directed such deliveries. Appellants offered no excuse or explanation of their conduct. When pressed for such an explanation, they declined to answer, upon the ground that their answers might incriminate them. The record shows an unlawful conspiracy to hamper respondent in the carrying on of his business, and supports the trial court's finding that each of appellants was guilty of violating the court's decree.

The trial court correctly found that appellants were in contempt, and that portion of the decree appealed from is affirmed.

■ The portion of the decree entered by the trial court containing a mandatory injunction requiring appellants to deliver products and commodities from

their respective employers' establishments to the respondent, Leo Delorme, appears to be subject to valid objection, and seems unnecessary in view of the fact that the court afforded to appellants an opportunity to purge themselves of the contempt which the court adjudged against them. The following paragraph will, therefore, be substituted for the last two paragraphs above quoted from the decree appealed from:

It is further ORDERED AND ADJUDGED that respondents, or any of them, may purge themselves of the contempt which the court has adjudged against them, severally, by, from the effective date of this decree, in a lawful and proper manner, delivering to plaintiff, Leo Delorme, at his place of business, or elsewhere, as may be directed, such commodities or merchandise as their respective employers may turn over to them for carriage to plaintiff, and by continuing to deliver to plaintiff such merchandise under the same conditions and in the same manner as deliveries are made by them to any other person in the normal course of business, so long as this decree stands unmodified.

If appellants fail to purge themselves of the contempt in which they stand before the court, the court may, of course, proceed against them upon the adjudged contempt, and mete out such punishment as in the exercise of the court's sound discretion may seem appropriate.

SIMPSON, C. J., STEINERT, ROBINSON, GRADY, JEFFERS, and MILLARD, JJ., concur.

BLAKE, J. (dissenting)—Appellants interposed a motion to quash the show cause order, upon which they were hailed into court, on the ground that the charge constituted a criminal contempt in contemplation of Rem. Rev. Stat., § 1049 [P. C. § 7442]; and, therefore, the proceeding could be initiated and maintained only by the prosecuting attorney on behalf of the state, in accordance with Rem. Rev. Stat., § 1054.

I think the motion was well taken and should have been granted. Obviously, the purpose of the proceed-

ing was to *punish* appellants for violation of the court's decree of March 13, 1939. To *punish* was the *full extent* of the court's power in the matter. As I read it, that is the substance of the holding in the majority opinion. Clearly, the facts of record bring this proceeding within the category of criminal contempt as defined by this court; therefore, the proceeding must be instituted and maintained by the prosecuting attorney on behalf of the state in accordance with Rem. Rev. Stat., § 1054. *In re Coulter,* 25 Wash. 526, 65 Pac. 759; *In re Harrington's Estate,* 163 Wash. 516, 1 P. (2d) 850. In the former case, the court said, p. 529:

"When, therefore, the lower court proceeded to punish the petitioner without following the prescribed procedure, it proceeded illegally, and without authority of law. It is no answer to say that the facts were brought before the court by the return of the officer. If the court may derive knowledge of the violation of its order from this source, it may, from any other source, even the oral statement of a stranger to the proceedings. *More than this, the statute is imperative.*" (Italics mine.)

And, in the latter, p. 519:

"This is a contempt proceeding. It was instituted to punish the appellant for disobedience of the court's order. It is criminal and punitive in its nature. For violation of the order to restore to the estate the money he had borrowed therefrom, the court found the appellant guilty of contempt, fined him one hundred dollars and costs, and committed him to prison to there remain until such fine and costs were paid. . . .

"The proceeding being criminal in its nature—the object of the proceeding was punishment—the state is the real prosecutor, and under our statute the proceeding should have been brought in the name of the state."

In attempting to make the decree of March 13, 1939, coercive by broadening it into a mandatory order directed to respondent, the trial court could not transform that which was necessarily a criminal contempt

into a civil contempt. The majority have, it seems to me, recognized this by striking the mandatory features from the order of contempt.

I dissent.

MALLERY, J., concurs with BLAKE, J.

