IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DOROTHY MARIE HUGHES,          )
                               )    No. 77104-3-I
                    Appellant, )
                               )    DIVISION ONE
        v.                     )
                               )    UNPUBLISHED OPINION
HOMER HAYWOOD HUGHES,          )
                               )
                    Respondent.)    FILED:  October 15, 2018
                               )

CHUN, J. — Dorothy Hughes appeals the partial denial of her motion to vacate the dissolution decree in this matter. Dorothy[1] claims the court violated her procedural due process rights when it entered the decree in her absence, contending she did not receive sufficient notice of the trial. As such, she asserts the court entered a void judgment. Dorothy now asks this court to vacate the decree and award her the entirety of her late husband's estate per their community property agreement. Because there was no violation of her due process rights, we affirm.

I.
BACKGROUND

During their marriage, Dorothy and Homer signed a community property agreement in which they agreed all their property constituted community property.

---

[1] For convenience, this opinion refers to the parties by their first names. We mean no disrespect.

On October 21, 2012, Homer contacted the Skagit County Sheriff, claiming Dorothy and their two daughters had dug up and stole silver worth approximately $3 million from his backyard. Dorothy and the children admitted they took the silver and transported it to Lakewood, Washington, and Kentucky.

On November 9, 2012, Dorothy, with the assistance of counsel, filed a petition for dissolution of her marriage to Homer.

The trial court issued a Temporary Order Regarding Silver on March 1, 2013. The order directed Dorothy to return the silver located in Kentucky to Washington State. After Dorothy failed to comply, Homer filed a motion for contempt. The court granted the motion for contempt on October 18, 2013, setting a $50.00 fine for each day, beginning November 23, 2013, the silver remained outside of Washington State. On December 6, 2013, the court found Dorothy owed $700 in fines and $200 in attorney fees. The court further ordered Dorothy to pay a $25 fine for each day the silver was not returned thereafter. Dorothy never complied with the court's orders.

Meanwhile, on October 25, 2013, Dorothy's attorney, David Lowell, withdrew from the case and Dorothy began representing herself. Dorothy then failed to respond adequately to discovery requests and did not reply to letters, phone messages, and emails from Homer's counsel. In a subsequent letter to the court, Dorothy indicated she was out of state and unaware of any phone messages or court documents to which she did not respond.

In March 2014, Dorothy received notice setting the trial in her dissolution case for May 14, 2014. The notice stated, "Notice of Non-Jury Trial Date" and

2

contained the case name, date, location, and time. Dorothy received this notice from the Clerk by certified mail and the court filed the return receipt with her signature.

Homer's attorney then sent Dorothy a letter on April 15, 2014 ("April 15 Letter"). In pertinent part, the letter stated as follows:

> As I mentioned to you in my previous letter dated December 19, 2013, parties in dissolution proceedings are required by local court rule 94.04.2(c) to participate in mediation prior to trial.[2] Earlier you stated you would make yourself available for mediation in March, but you did not follow through on that assurance.
>
> . . .
>
> As you know, we have a trial scheduled in this matter for May 14th and 15th, 2014. If you do not participate in mediation prior to trial and you or your representative appear at trial, I will have no

---

[2] The portion of the SCLR that Homer's attorney referred to as well as the other pertinent portions of SCLR 94.04.2 are:

> (c) MEDIATION IN CONTESTED CASES. Mediation shall apply to all cases filed after January 1, 2004. Except as provided in Section (d) below, in all cases specified in Section (a) having unresolved issues (except child support issues), both parties shall in good faith engage in mediation with a court-approved mediator in an effort to resolve the case. The parties may either agree to a mediator from the court-approved list or the mediator will be determined by use of a strike list. Either party may seek a court apportionment of the cost of mediation. In cases where parenting issues exist, the mediation shall not occur until both parties have completed the parenting seminar described in SCLSPR 94.04.1. A certificate of completion signed by the mediator shall be filed with the clerk of the court prior to trial.
>
> (d) WHEN MEDIATION IS NOT REQUIRED. Mediation shall be required as provided in Section (c) except in the following cases:
> (1) For good cause shown upon motion and approval by the court;
> ...
>
> (e) FAILURE TO COMPLY. A party's compliance with the provisions of this rule may be enforced upon Motion and Order to Show Cause. Unless compliance is waived by the court for good cause shown, the court may order appropriate sanctions including costs, attorney's fees, and adoption of the complying party's proposal.
> ...
>
> (g) CERTIFICATE OF COMPLETION. Prior to a final dissolution hearing or the trial date, mediation must be completed. Failure to complete mediation, prior to the trial date, will result in the trial being stricken. A certification of completion signed by the mediator shall be filed with the clerk.

alternative, but to ask for attorney fees and an order compelling you to participate in mediation.

On May 14, 2014, Dorothy failed to appear for trial. Prior to trial, Homer's attorney specifically mentioned mediation, stating he had "sent [Dorothy] letters about mediation, telling her about it, telling her we would like to do it . . . but she was never willing to actually engage in the question of whether she would actually mediate or talk about how to resolve the case." The court then held the trial, in which Homer testified as to jurisdictional facts, and it dissolved the marriage in accordance with Homer's proposed final orders. In the dissolution decree, Homer received all the real property, including timberland, while Dorothy kept her pension, stocks, and the silver she had stolen.

On May 23, 2014, after learning the court entered the dissolution decree, Dorothy hired a new attorney and filed a motion to set aside the decree under CR 56(a) and CR 60(b)(4), claiming fraud and misrepresentation. In her motion, Dorothy argued Homer misrepresented the values of their community property and the April 15 Letter led her to believe divorce would not be granted at trial. Dorothy also asserted no pretrial mediation occurred as required by SCLR 94.04.2. On June 6, 2014, however, Dorothy withdrew the motion claiming she "could not take the emotional strain."

Based on the outcome of the dissolution proceeding, on June 24, 2014, Homer drafted a new will. The same day, Dorothy executed quitclaim deeds to

4

transfer the title to the real property awarded to Homer in the dissolution. Shortly thereafter, on June 30, 2014, Homer passed away.

Over a year later, on November 19, 2015, Dorothy hired new counsel and moved for an order to show cause as to why the May 2014 dissolution decree should not be vacated. Dorothy argued the decree should be vacated under various provisions of CR 60(b). As in her first motion, Dorothy maintained Homer misrepresented the values of their community property to the court and pointed to her confusion about the trial date because of the April 15 Letter. She asserted again no SCLR 94.04.2 mandated pretrial mediation occurred.

On June 15, 2016, the court granted the show cause motion. Homer's estate sought discretionary review of the order in this court, but a commissioner determined Homer's estate had appealed prematurely.

After this court denied discretionary review, the trial court held the show cause hearing on February 24, 2017. The court stated that, while the local rules require mediation, Dorothy intentionally[3] avoided the proceedings to evade both a contempt finding and potential law enforcement action based on her failure to return the silver. As to the misrepresented values of property, the court found the timberland extremely undervalued in the original dissolution due to either fraud or

---

[3] At the February 24 hearing, the court made statements about Dorothy purposefully absenting herself but did not make a finding that her absence from trial was intentional. Later, at a proceeding to enter the order on June 7, 2017, the court stated it "was [his] impression" that Dorothy purposefully absented herself from trial but that "may not have been an accurate [impression]." Nevertheless, the court did not change its original decision to only vacate the dissolution decree with respect to the timber property.

gross negligence. Accordingly, the court bifurcated the dissolution decree and vacated only the portion relating to the distribution of the timber property.

Dorothy timely appealed the order partially vacating the dissolution decree. On January 4, 2018, Homer's estate moved to dismiss the appeal, arguing the order was interlocutory and not appealable. A commissioner of this court denied Homer's estate's motion to dismiss because, under RAP 2.2(a)(10), one may appeal an order partially vacating a dissolution decree, which qualifies as an order granting or denying a motion to vacate a judgment.

## II.
## ANALYSIS

Dorothy claims, although she received notice of the trial date, it failed to satisfy procedural due process because SCLR 94.04.2 and the April 15 Letter led her to believe a trial would not take place without prior mediation.[4] Because Dorothy received sufficient notice of the trial, we conclude the trial did not violate her due process rights.

Appellate courts review de novo whether a trial court erred in granting or denying a motion to vacate a judgment as void. Dobbins v. Mendoza, 88 Wn. App. 862, 871, 947 P.2d 1229 (1997).

Procedural due process requires notice and an opportunity to be heard. State v. Ralph Williams' North West Chrysler Plymouth, Inc., 87 Wn.2d 327, 335, 553 P.2d 442 (1976). For notice to meet these constitutional requirements, it

---

[4] At some points, Dorothy appears to argue the trial violated her due process rights because no mediation occurred before trial. We do not consider the merits of this claim as she offers no legal basis for them as required under RAP 10.3(a)(6).

need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In re Marriage of Himes, 136 Wn.2d 707, 736–37, 965 P.2d 1087 (1998). Notice must also give a party "sufficient time to make an intelligent decision to appear or default." Johnson v. Johnson, 107 Wn. App. 500, 504, 27 P.3d 654 (2001).

A court enters a void judgment if it did not first provide notice and an opportunity to be heard. State ex. rel. Adams v. Super. Ct., Pierce Cty., 36 Wn.2d 868, 872, 220 P.2d 1081 (1950). Courts must vacate void judgments and have no discretion to do otherwise. Chai v. Kong, 122 Wn. App. 247, 254, 93 P.3d 936 (2004). If, however, a court enters an order with both jurisdiction and the inherent power to enter the order, a procedural irregularity makes the judgment only voidable. Chai, 122 Wn. App. at 254.

Dorothy asserts the notice she received was inadequate because no reasonable person, after reading SCLR 94.04.2 and the April 15 Letter, would understand a trial would be held on May 14, 2014. However, the notice Dorothy received for the trial date was quite clear. The notice came from the court and stated "Notice of Non-Jury Trial Date" and contained the case name, date, location, and time. Furthermore, Dorothy received the notice in March 2014, two months before the scheduled trial date. With two months to prepare, Dorothy

had "sufficient time to make an intelligent decision to appear or default." See Johnson, 107 Wn. App. at 504.

Moreover, SCLR 94.04.2 and the April 15 Letter from opposing counsel did not render this notice insufficient. First, though SCLR 94.04.2(c) states, "[m]ediation shall apply to all cases filed after January 1, 2004," SCLR 94.04.2(d)(1)–(4) provides a number of instances in which the rule does not necessitate mediation. In particular, SCLR 94.04.2(d)(1) does not require mediation "for good cause shown upon motion and approval by the court." Thus, a full reading of the rule demonstrates mediation prior to trial is not an absolute requirement and may be waived in several circumstances. The "good cause" language of SCLR 94.04.2(d)(1) alerts a party to the possibility trial may be held without mediation if they do not participate in good faith. Further, permitting a party to thwart a trial by continuously refusing to mediate would allow litigants to manipulate the rule and frustrate court proceedings.

Second, the April 15 Letter clearly stated "we have a trial scheduled in this matter for May 14th and 15th, 2014." The letter also provided mediation was required prior to trial and Homer would move to compel mediation if Dorothy appeared at trial, but did not contradict any of the information in the Clerk's notice regarding the trial date, time, and location. Instead, the letter reiterated the trial date and merely notified Dorothy of her mediation obligations in an attempt to encourage her to participate. Thus, even when considering the local rule and the April 15 Letter, the notice Dorothy received from the Clerk was "reasonably calculated, under all the circumstances, to apprise [her] of the pendency of the

action and afford [her] an opportunity to present [her] objections." <u>Himes</u>, 136 Wn.2d at 736–37.

Consequently, the trial court neither violated Dorothy's due process rights nor erred in declining to vacate the decree.

Accordingly, we affirm.

Chun, J.

WE CONCUR: