IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MICHELLE T. ALVAREZ, | No. 82439-2-I |
| Respondent, | |
| v. | DIVISION ONE |
| SHANNON J. BITZER SR., | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, A.C.J. — Michelle Alvarez moved to register a 2013 New Jersey child custody order in Washington State. Shannon Bitzer, the child's father, moved to dismiss the registration of the order, alleging that he did not receive notice before the entry of the order. Alvarez disputed Bitzer's claim, alleging that he was served by mail at his work address. The court found Alvarez to be more credible and confirmed the registration of the order. Because there is no indication in the New Jersey order, the New Jersey court file, or the record before us that Bitzer ever received notice, and because Alvarez now repudiates the claims that the court found credible below, we conclude that Bitzer met his burden to establish the invalidity of the order. Therefore, we reverse.

FACTS

Michelle Alvarez and Shannon Bitzer had a child, S.B., together in 2010. They lived together in New Jersey until S.B. was 5 months old, at which point Bitzer moved out of state, eventually settling in California.

Citations and pin cites are based on the Westlaw online version of the cited material.

In August 2013, Alvarez filed a complaint in New Jersey seeking to establish S.B.'s residential placement with her and to order Bitzer to pay child support.  In September, the court entered an order granting Alvarez "Sole Legal & residential custody" and child support in the amount of $50 per week.  The order indicated that Bitzer did not appear at the hearing, but it did not specify whether or how Bitzer was served.  In January 2014, the court entered an amended order to reflect that "child support is payable through probation" and noting that paternity was established.  Evidence in the record establishes that Bitzer sent Venmo[1] payments to Alvarez's father for S.B. for at least the next year, in the amount of about $200 per month, although he sent $400 some months and there is no record of him sending payments for other months.

In August 2017, Alvarez and S.B. moved to Seattle.  In March 2020, S.B.'s school transitioned to remote learning because of the COVID-19[2] pandemic, and because Alvarez was still required to go to work in person, she asked Bitzer to take S.B. through the rest of the school year.  Bitzer agreed, and S.B. went to California to stay with Bitzer.  But at the end of the school year, the parties disagreed about whether S.B. should stay in California or go to New Jersey to stay with Alvarez's father for the summer.  Bitzer and Alvarez initiated multiple actions in New Jersey, California, and Washington to resolve the dispute.

---

[1] Venmo is an internet mobile payment service that allows people to send and receive money electronically.

[2] COVID-19 is the World Health Organization's official name for "coronavirus disease 2019," a severe, highly contagious respiratory illness that quickly spread throughout the world after being discovered in December 2019.

Ultimately, on October 22, 2020, Alvarez requested to register the 2013 New Jersey order in King County, Washington. Bitzer moved to dismiss the registration, contending that the New Jersey court did not have jurisdiction and that Bitzer was never provided with notice of the New Jersey action. He claimed he did not learn about the New Jersey orders until 2020. Alvarez filed a declaration disputing this. She contended that Bitzer had "concealed his address for service of documents but was served via mail at his work address. I repeatedly told him about the court hearing, but he would not tell me his person[al] address because he didn't want to have to pay child support through the state." Alvarez also requested the New Jersey court file from the 2013 action, but the file contained only the two New Jersey orders, the child support worksheet, and Alvarez's initial complaint. The New Jersey court informed Alvarez that all other records had been destroyed under the court's public records retention policies.

The King County superior court denied Bitzer's motion to dismiss, finding that Bitzer had failed to meet his burden to prove that he did not receive notice and that Alvarez's declarations were more credible.

Bitzer appeals.

ANALYSIS

Consideration of Appendices to Response Brief

As a preliminary matter, we agree with Bitzer that we should disregard several of the appendices to Alvarez's brief.

3

Under RAP 10.3(a)(8), an appendix to a brief "may not include materials not contained in the record on review without permission from the appellate court."  The only exception is that "[i]f a party presents an issue which requires study of a statute, rule, regulation, jury instruction, finding of fact, exhibit, or the like," the party may include that text in an appendix, regardless of whether it is in the record below.  RAP 10.4(c).

Here, we disregard Appendices 7, 10, 11, 13, 14, 15, and 19 to Alvarez's brief.[3]  These appendices, which are New Jersey family court documents such as child support or custody manuals and directives from the New Jersey Administrative Office of the Courts to judges, are not included in the record below, and Alvarez did not ask for permission to attach them.

Alvarez contends that the appendices are "like" the statutes, rules, and regulations permitted under RAP 10.4(c).  She contends that they are legislative facts, "which the court may consider when determining the constitutionality or interpretation" of a rule.  State ex rel. T.B. v. CPC Fairfax Hosp., 129 Wn.2d 439, 454, 918 P.2d 497 (1996) (considering scholarly articles attached to a brief

---

[3] The appendices are as follows: Directive #12-08 from the Administrative Office of the Courts re: Probation Child Support Enforcement (Appendix 7); New Jersey Judiciary Child Support Hearing Officer Program Operations Manual (Appendix 10); Child Support Hearing Officer Program Standards (Appendix 11); Directive #08-11 from the Administrative Office of the Courts re: Family – Non-Dissolution Matters – Revised Procedures (Appendix 13); New Jersey Courts Packet – How to file a non-divorce application for custody, child/spousal support or parenting time (visitation) (July 2012) (Appendix 14); New Jersey Courts Packet – How to File a Non-Divorce Application for Custody, Child/Spousal Support or Parenting Time (Visitation) (September 2019) (Appendix 15); Records Retention Schedule – Chancery Division – Family Part (March 16, 2001) (Appendix 19).

because they do not "establish the specific facts of this case" and were instead legislative facts). But these are not court rules or scholarly articles. They are generally administrative documents from a different jurisdiction, which Alvarez indeed attempts to use to establish the specific facts of this case by explaining how Bitzer was served. Because these facts were not introduced below, we decline to consider them.

Registration of New Jersey Custody Order

Bitzer contends that the court erred by confirming the registration of the New Jersey order. Because Bitzer met his burden to challenge the validity of the order, we agree.

Under RCW 26.27.441(4)(c), a person may contest the validity of a registered order by establishing that they were "entitled to notice, but notice was not given in accordance with the standards of RCW 26.27.081, in the proceedings before the court that issued" the order. That notice "may be given in a manner prescribed for service of process by the law of the state in which the service is made or given in a manner reasonably calculated to give actual notice." RCW 26.27.081(1). It may take the form of "(a) Personal delivery outside this state in the manner prescribed for service of process within this state; (b) By any form of mail addressed to the person to be served and requesting a receipt; or (c) As directed by the court, including publication if other means of notification are ineffective." Id.

"We presume courts act in a lawful manner." State v. Ralph Williams' N. W. Chrysler Plymouth, Inc., 87 Wn.2d 327, 337, 553 P.2d 442 (1976). The

"considerations of the regularity and stability of judgments entered by the court require that 'after a judgment has been rendered upon proof made by the sheriff's return, such judgment should only be set aside upon convincing evidence of the incorrectness of the return.' " Farmer v. Davis, 161 Wn. App. 420, 428, 250 P.3d 138 (2011) (italics omitted) (quoting Allen v. Starr, 104 Wash. 246, 247, 176 P. 2 (1918)). "A facially correct return of service is presumed valid and, after judgment is entered, the burden is on the person attacking the service to show by clear and convincing evidence that the service was irregular." Woodruff v. Spence, 88 Wn. App. 565, 571, 945 P.2d 745 (1997).

We apply a substantial evidence standard of review where the trial court's decision turns on credibility determinations, even where those determinations are based only on documentary records. In re Marriage of Rideout, 150 Wn.2d 337, 350-51, 77 P.3d 1174 (2003). We review issues of law de novo. In re Marriage of Zier, 136 Wn. App. 40, 45, 147 P.3d 624 (2006).

Here, Bitzer met his burden to establish that he was not served. Although, normally, more than a general denial that a party was served is required to meet the clear and convincing burden, the record typically includes specific information, such as a return of service, that the party challenging service can then specifically refute. See Woodruff, 88 Wn. App. at 571 (party did not meet his burden to establish that service was irregular where, although he established that he was not at the property the day service was achieved, he did not call any witness to "corroborate his testimony that no person fitting the description of the person allegedly served resided then at his property"). In this case, there was no

6

information in the New Jersey record whatsoever indicating that Bitzer was served. The New Jersey court did not check any of the provided boxes to indicate whether or how service was achieved, nor did it check the box indicating that the order was entered by default after the obligor was properly served.[4] There is no return of service in the New Jersey court file, which would include specific facts that Bitzer could then specifically refute.[5] The only evidence of completed child support payments in the record are Venmo transactions from Bitzer to Alvarez's father, rather than payments made through any government agency. These transactions, while roughly in line with the ordered child support, deviate in both frequency and amount from the court's specific order of $50 per week. Given the complete lack of any evidence in the New Jersey record indicating that Bitzer was served, Bitzer's denial that he ever received notice and the lack of evidence that he ever took action as a result of the orders are sufficient to meet his burden that he was not served.

---

[4] Alvarez points out that there are other boxes that the court opted not to check, such as not using box 5 to indicate the amount of child support and instead entering the amount manually in box 23. But the court did check some boxes, and the fact remains that no indication exists on the face of the order that Bitzer did in fact receive notice of the hearing. Also, in the January 2014 order, the court did check several of the boxes indicating the amount of child support and its enforcement but still did not indicate whether there was any service.

[5] Alvarez's trial lawyer indicated that the New Jersey court informed her that "all records, with the exception of court orders, were destroyed pursuant to the Court's Public Records Retention policies." A March 2001 Records Retention Schedule admitted below does not clearly indicate that returns of service were to be destroyed, but also is not specific to the Family Part of the Superior Court Chancery Division. Regardless of whether there ever was a return of service, its absence from the file equally prevents Bitzer from having any specific alleged facts about his service to rebut.

Moreover, Alvarez failed to provide any compelling evidence to the contrary. At the trial court, she indicated that Bitzer "concealed his address for service of documents but was served via mail at his work address. I repeatedly told him about the court hearing, but he would not tell me his person[al] address because he didn't want to have to pay child support through the state." At a different point, she claimed that her "recollection of the 2013 New Jersey hearing is that the judge found that Mr. Bitzer was evading service, as he would not disclose his residential address to her despite repeated requests. She believes that the court found notice sufficient." But the New Jersey complaint that Alvarez filed lists an address with an apartment number for Bitzer. Both Bitzer and Alvarez represent on appeal that this address was, in fact, Bitzer's residential address. Alvarez presents a new factual scenario on appeal, contending that the New Jersey court mailed process to Bitzer's home address under N.J. Ct. R. 5:4-4(b)(1) ("The Family Part shall mail process simultaneously by both certified and ordinary mail to the mailing address of the adverse party"). But we cannot assume that this is the case: service of process under N.J. Ct. R. 5:4-4(b)(1) is only one option for service of process *within* the state of New Jersey, and service for complaints *outside* of New Jersey may be made in a variety of ways. N.J. Ct. R. 5:4-4(a) ("For initial complaints, substituted or constructive service of process outside this State may be made pursuant to the applicable provisions in R. 4:4-4 or R. 4:4-5."); N.J. Ct. R. 4:4-4(b) (describing service options including mail or

8

personal service outside of New Jersey, as otherwise provided by law, or by court order).[6]

Alvarez also points to text messages that she claims show Bitzer was aware of the New Jersey proceedings. But not only do the texts show Bitzer claiming that Alvarez never went forward with the New Jersey proceedings, they also took place years after the entry of the order, and are therefore irrelevant to the question of whether Bitzer received notice before the hearing.

The only indication in the record that Bitzer was ever served is Alvarez's explanation about mailing service to his work address, a claim for which no documentary evidence exists and which Alvarez disavows on appeal. Given the lack of any evidence to the contrary, Bitzer's denial that he received notice was sufficient to meet his burden under RCW 26.27.441(4)(c) to establish the order's invalidity. Therefore, we reverse the court's confirmation of the New Jersey order.

## Attorney Fees

Alvarez requests attorney fees on appeal on the grounds that Bitzer's appeal was frivolous, that it exhibited intransigence, and under RCW 26.26B.060 because she had to defend against his appeal.

---

[6] Bitzer contends the New Jersey court rules show that he did not receive service because the date of the hearing fell before the date that should have been his deadline for filing an answer. But while Bitzer points to rules about the deadline for filing an answer, this was a summary family action, wherein rather than filing an answer, a defendant must simply appear. N.J. CT. R. 5:4-1(b) ("[I]n lieu of requiring an answer, [the summons] shall notify the defendant to appear. . .").

A court may award attorney fees where a party files a frivolous appeal or is intransigent. RAP 18.9(a); Matter of Marriage of Dalthorp, 23 Wn. App. 904, 912, 598 P.2d 788 (1979). It may also award fees under RCW 26.26B.060, because a party had to expend fees defending the trial court's placement decision, as in In re Parentage of J.H., 112 Wn. App. 486, 501, 49 P.3d 154 (2002). But Bitzer's appeal was successful, so the appeal was not frivolous, Alvarez is not entitled to fees for having to defend it, and Bitzer cannot have been intransigent for pursuing his theory.[7] We deny Alvarez's request.

We reverse.

Smith, A.C.J.

WE CONCUR:

Chung, J.                          Mann, J.

---

[7] Alvarez also contends that Bitzer misled the court by citing to the wrong New Jersey court rule, but this does not appear to be the case. What Alvarez references as the correct court rule in turn references the rules relied upon by Bitzer. N.J. Cᴛ. R. 5:4-4(a) ("For initial complaints, substituted or constructive service of process outside this State may be made pursuant to the applicable provisions in R. 4:4-4 or R. 4:4-5.").